UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA**
*ex rel.* **URI BASSAN**,
9000 Modesto Avenue
Albuquerque, NM  87122,

                          Relator,

**STATE OF CALIFORNIA**
California Department of Justice
ATTN:  False Claims Unit
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004;

**STATE OF COLORADO**
Office of the Attorney General
1300 Broadway, 10th Floor
Denver, CO  80203;

**STATE OF CONNECTICUT**
Office of the Attorney General
55 Elm Street
Hartford, CT  06106;

**STATE OF DELAWARE**
Office of the Attorney General
Delaware Department of Justice
Carvel State Building
820 N. French Street
Wilmington, DE  19801;

**STATE OF FLORIDA**
Office of the Attorney General
The Capitol PL-01
Tallahassee, FL  32399-1050;

**STATE OF GEORGIA**
Office of the Attorney General
40 Capitol Square, SW
Atlanta, GA  30334;

**FILED UNDER SEAL**

CIVIL ACTION NO. _____

JURY TRIAL DEMANDED

**STATE OF HAWAII**
Office of the Attorney General
425 Queen Street
Honolulu, HI 96813;

**STATE OF ILLINOIS**
Office of the Attorney General
100 W. Randolph Street
Chicago, IL 60601;

**STATE OF INDIANA**
Office of the Attorney General
302 W. Washington Street, 5th Floor
Indianapolis, IN 46204;

**STATE OF IOWA**
Office of the Attorney General
Hoover State Office Building
1305 E. Walnut Street
Des Moines, IA 50319;

**STATE OF LOUISIANA**
Office of the Attorney General
1885 N. Third Street
Baton Rouge, LA 70802;

**STATE OF MARYLAND**
Office of the Attorney General
200 St. Paul Place
Baltimore, MD 21202;

**COMMONWEALTH OF MASSACHUSETTS**
Office of the Attorney General
One Ashburton Place
Boston, MA 02108;

**STATE OF MICHIGAN**
Office of the Attorney General
G. Mennen Williams Building 7th Floor
Lansing, MI 48909;

**STATE OF MINNESOTA**
Office of the Attorney General
1400 Bremer Tower
445 Minnesota Street
St. Paul, MN 55101;

**STATE OF MONTANA**
Office of the Attorney General
215 N. Sanders, Third Floor
Helena, MT  59620;

**STATE OF NEVADA**
Office of the Attorney General
NH Department of Justice
33 Capitol Street
Concord, NH  03301;

**STATE OF NEW JERSEY**
Office of the Attorney General
RJ Hughes Justice Complex
25 Market Street, Box 080
Trenton, NJ  08625-0080;

**STATE OF NEW MEXICO**
Office of the Attorney General
48 Galisteo Street
Villagra Building
Santa Fe, NM  87501;

**STATE OF NEW YORK**
Office of the Attorney General
The Capitol
Albany, NY  12224;

**STATE OF NORTH CAROLINA**
Office of the Attorney General
9001 Mail Service Center
Raleigh, NC  27699;

**STATE OF OKLAHOMA**
Office of the Attorney General
313 NE 21st Street
Oklahoma City, OK  73105;

**STATE OF RHODE ISLAND**
Office of the Attorney General
150 S. Main Street
Providence, RI  02903;

**STATE OF TENNESSEE**
Office of the Attorney General
P.O. Box 20207
Nashville, TN  37202;

**STATE OF TEXAS**
Office of the Attorney General
300 W. 15th Street
Austin, TX  78701;

**STATE OF VERMONT**
Office of the Attorney General
109 State Street
Montpelier, VT  05609-1001;

**COMMONWEALTH OF VIRGINIA**
Office of the Attorney General
900 E. Main Street
Richmond, VA  23219;

**STATE OF WASHINGTON**
Office of the Attorney General
1125 Washington Street SE
Olympia, WA  98504;

**STATE OF WISCONSIN**
Office of the Attorney General
Wisconsin Department of Justice
P.O. Box 7857
Madison, WI  53707; and

**DISTRICT OF COLUMBIA**
Office of the Attorney General
441 4th Street, NW
Washington, D.C. 20001

                              Plaintiffs,

       v.

**OMNICARE, INC.,**
201 East Fourth Street
Cincinnati, OH  45202

                              Defendant.

## RELATOR'S COMPLAINT PURSUANT TO THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C. § 3729 *ET SEQ.*, AND SUPPLEMENTAL STATE FALSE CLAIMS ACTS

1.      The Relator, Uri Bassan ("Relator"), on behalf of the United States of America, the State of California, the State of Colorado, the State of Connecticut, the State of Delaware, the State of Florida, the State of Georgia, the State of Hawaii, the State of Illinois, the State of Indiana, the State of Iowa, the State of Louisiana, the State of Maryland, the Commonwealth of Massachusetts, the State of Michigan, the State of Minnesota, the State of Montana, the State of Nevada, the State of New Jersey, the State of New Mexico, the State of New York, the State of North Carolina, the State of Oklahoma, the State of Rhode Island, the State of Tennessee, the State of Texas, the State of Vermont, the Commonwealth of Virginia, the State of Washington, the State of Wisconsin, and the District of Columbia (hereinafter "Plaintiff States"), brings this action against Omnicare, Inc. for violations of the Federal False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.,* and for violations of the following State False Claims Acts ("State FCAs"): the California False Claims Act, Cal. Gov't Code § 12650 *et seq.*; the Colorado Medicaid False Claims Act, Colo. Rev. Stat. § 25.5-4-303.5 *et seq.*; the Connecticut False Claims Act, Conn. Gen. Stat. § 4-274 *et seq.*; the Delaware False  Claims  and Reporting  Act,  Del. Code Ann. tit. 6, § 1201 *et seq.*; the Florida False Claims Act, Fla. Stat. § 68.081 *et seq.*; the Georgia False Medicaid Claims Act, Ga. Code Ann. § 49-4-168 *et seq.*; the Georgia Taxpayer Protection False Claims Act, Ga. Code Ann. § 23-3-120 *et seq.*; the Hawaii False Claims Act, Haw. Rev. Stat. § 661-21 *et seq.*; the Illinois Whistleblower Reward and Protection Act, 74 Ill. Comp. Stat. 175/1  *et seq.*; the Indiana False Claims and Whistleblower Protection Act, Ind. Code § 5-11-5.5 *et seq.*; the Indiana Medicaid False Claims and Whistleblower Protection Act, Ind. Code § 5-11-5.7 *et seq.*; the Iowa False Claims Act, Iowa

Code § 685.1 *et seq.*; the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. Ann. § 46:437.1 *et seq.*; the Maryland False Health Claims Act, Md. Code Ann., Health-Gen. § 2-601 *et seq.*; the Massachusetts False Claims Act, Mass. Gen. Laws ch. 12, § 5 *et seq.*; the Michigan Medicaid False Claims Act, Mich. Comp. Laws § 400.601 *et seq.*; the Minnesota False Claims Act, Minn. Stat. § 15C.01 *et seq.*; the Montana False Claims Act, Mont. Code Ann. § 17-8-401 *et seq.*; the Nevada Submission of False Claims to State or Local Government Act, Nev. Rev. Stat. § 357.010 *et seq.*; the New Jersey False Claims Act, N.J. Stat. Ann. § 2A:32C-1 *et seq.*; the New Mexico Medicaid False Claims Act, N.M. Stat. Ann. § 27-14-1 *et seq.*; the New Mexico Fraud Against Taxpayers Act, N.M. Stat. Ann. § 44-9-1 *et seq.*; the New York False Claims Act, N.Y. State Fin. Law § 187 *et seq.*; the North Carolina False Claims Act, N.C. Gen. Stat. § 1-605 *et seq.*; the Oklahoma Medicaid False Claims Act, Okla. Stat. tit. 63, § 5053 *et seq.*; the Rhode Island State False Claims Act, R.I. Gen. Laws § 9-1.1-1 *et seq.*; the Tennessee False Claims Act, Tenn. Code Ann. § 4-18-101 *et seq.*; the Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-171 *et seq.*; the Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code Ann. § 36.001 *et seq.*; the Vermont False Claims Act, Vt. Stat. Ann. tit. 32, § 630 *et seq.*; the Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.1 *et seq.*; the Washington State Medicaid Fraud False Claims Act, Wash. Rev. Code § 74.09.201 *et seq.*; the Wisconsin False Claims for Medical Assistance Act, Wis. Stat. § 20.931; and the District of Columbia False Claims Act, D.C. Code § 2-381.01 *et seq.* Relator brings these claims to recover all damages, civil penalties, and other relief available under the federal FCA and State FCAs.

**THE PARTIES**

2.       Defendant Omnicare, Inc. ("Omnicare") is a corporation organized under the laws of the State of Delaware with its corporate offices located at 201 East Fourth Street, Cincinnati, Ohio. Omnicare owns and operates pharmacies that provide services to elderly and disabled residents of hundreds of skilled nursing facilities ("SNFs"), assisted living facilities ("ALFs"), and other healthcare or residential facilities (collectively referred to as "facilities") located in forty-seven states and the District of Columbia.

3.       The United States of America is a plaintiff to this action. This *qui tam* action is brought on behalf of the United States pursuant to the FCA based on Omnicare's illegal practice of making and causing to be made false records and the submission of false claims to the United States government and its employees, agents and contractors, including those agents and contractors who administer the Medicare program, Medicaid program, and related government programs. The false records and false claims at issue were used to obtain reimbursement for prescription (legend) drugs dispensed by Omnicare without valid prescriptions. The legend drugs dispensed by Omnicare without valid prescriptions include drugs that treat a wide range of medical conditions affecting the elderly and disabled, including but not limited to cardiovascular conditions, central nervous system disorders, endocrine conditions, immune system disorders, mental health conditions, neoplastic disorders, and respiratory conditions. Some of these legend drugs are controlled substances listed in Schedules III to V of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* ("CSA").

4.       The Plaintiff States are each plaintiffs in this action. This *qui tam* action is brought on behalf of the Plaintiff States pursuant to the State FCAs based on Omnicare's making and causing to be made false records and the submission of false claims to the Plaintiff States

and their employees, agents and contractors, including those agents and contractors who administer the states' Medicaid programs.

5.     The Medicare program is a government health program that covers people age 65 and older, some disabled people under 65, and people of all ages with End Stage Renal Disease. 42 U.S.C. §§ 426, 426A.

6.     The Medicaid Program, 42 U.S.C. § 1396 *et seq.*, is a government health program funded jointly by the federal and state governments. Each state administers its own Medicaid program; however, each state program is governed by federal statutes, regulations, and guidelines. The federal portion of a state's Medicaid payments – the Federal Medical Assistance Percentage – is determined based on a state's per capita income compared to the national average.

7.     Relator Uri Bassan is a licensed pharmacist. He graduated with a Bachelor's of Science degree from the University of New Mexico College of Pharmacy in 1999. Between 1994 and 2007, Mr. Bassan worked for Walgreens. Before graduating from the University of New Mexico College of Pharmacy, Mr. Bassan worked for Walgreens as a pharmacy technician, and later as a pharmacy intern. Upon receiving his pharmacy degree in 1999, Mr. Bassan began working for Walgreens as a staff pharmacist. In 2003, Mr. Bassan was promoted to store management at Walgreens, and held the position of Executive Assistant Manager, the second in charge of his Walgreens store in Albuquerque, New Mexico. In 2007, Mr. Bassan took the position of Pharmacist-in-Charge at Omnicare's Albuquerque pharmacy, and he has worked for Omnicare in that capacity since that time.

8.     Relator has standing to bring this action pursuant to 31 U.S.C. § 3730(b)(1), as well as the relevant provisions of the State FCAs. In advance of filing this lawsuit, Relator

disclosed the facts that form the basis of this case to the Attorney General's Office for Plaintiff United States of America and to the Attorney General's offices for each of the Plaintiff States.

9.      Relator's Complaint is not based on any public disclosure of the allegations or transactions discussed herein, including but not limited to any alleged public disclosure in any criminal, civil, or administrative hearing, lawsuit or investigation, or in a Government Accounting Office or Auditor General's reporting, hearing, audit, or investigation, or from the news media. Relator is an original source of the information that forms the basis for this lawsuit. Relator has first-hand knowledge of such information, and his knowledge is independent of and materially adds to whatever information, if any, might have been publicly disclosed regarding such matters. Prior to filing this action, Relator voluntarily disclosed to the United States government, through the United States Attorney's Office, the information that forms the basis for this case. As alleged, Relator also voluntarily disclosed this information to the Plaintiff States.

## SUMMARY OF THE ACTION

10.      Omnicare distributes legend drugs through approximately 146 pharmacies. These pharmacies receive orders for legend drugs from various elder care facilities (including SNFs and ALFs), process those orders, have the orders reviewed by pharmacists, cause claims to be submitted to government health programs for payment, receive payment from government health programs for these drugs, and distribute the legend drugs to elderly and disabled individuals who reside at healthcare and residential facilities within their respective regions.

11.      Omnicare has distributed legend drugs to millions of elderly and disabled individuals who reside in hundreds of facilities throughout the county, including SNFs and ALFs located in at least forty-seven states. Many of these individuals are beneficiaries of federal and state government health programs, including but not limited to Medicare and Medicaid.

12.     During the relevant time, Omnicare has averaged more than $6 billion in total net sales each year, with more than $3 billion each year (50% of its net revenues) being derived from the sale of legend drugs reimbursed by government health programs, such as Medicare and Medicaid.

13.     As alleged in greater detail below, Omnicare has created false documents and caused false claims to be submitted to federal and state government programs, including Medicare and Medicaid, by routinely generating false prescriptions through its computerized pharmacy dispensing program, known as cycle fill, despite knowing that there are no valid prescriptions, and then seeking payment from government programs, including Medicare and Medicaid, based on these false prescription records.

14.     As alleged herein, Omnicare through its computerized cycle fill system and other standardized business practices has routinely dispensed, without valid prescriptions, legend drugs (including Schedule III, IV and V controlled substances) to elderly and disabled individuals residing at ALFs and other facilities, and has created false documents and unlawfully caused false claims to be submitted to federal and state government health programs, including Medicare and Medicaid, to obtain payment for those legend drugs. Omnicare engaged in such conduct knowingly and has violated the FCA and the State FCAs.

## JURISDICTION AND VENUE

15.     The Court has jurisdiction over this matter pursuant to the FCA, 31 U.S.C. § 3729 *et seq.*, specifically, 31 U.S.C. § 3732(a) and (b), and 28 U.S.C. §§ 1331, 1345. The Court also has supplemental jurisdiction over the claims alleged under the State FCAs pursuant to 28 U.S.C. § 1367, particularly to the extent those claims involve false claims presented to Medicaid programs that are funded jointly by the United States and Plaintiff States.

16.     Venue in this forum is appropriate pursuant to 31 U.S.C. § 3732(a) because, at all material times, Omnicare has transacted substantial business in this judicial district and submitted or caused the submission of false documents and false claims in this judicial district. During 2014, Omnicare sold many millions of dollars of legend drugs to elderly and disabled individuals residing at facilities located in the State of New York, including many facilities located within this judicial district. These legend drug sales were made through Omnicare pharmacies located in the State of New York, including one or more pharmacies located within this judicial district. The false claims made to federal and state government health programs in connection with such drugs sales are substantial and material to this case.

## THE FEDERAL AND STATE FALSE CLAIMS ACTS

17.     The FCA, 31 U.S.C. §§ 3729-3733, provides, *inter alia*, that any person who (1) "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or (2) "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," is liable to the United States for a civil monetary penalty plus treble damages. 31 U.S.C. § 3729(a)(1)(A)-(B).

18.     The terms "knowing" and "knowingly" are defined to mean "that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A)(i)-(iii). Proof of specific intent to defraud is not required. 31 U.S.C. § 3729(b)(1)(B).

19.     The term "claim" means "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that (1) is presented to an officer, employee, or agent of the United States; or (2) is

11

made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (a) provides or has provided any portion of the money or property requested or demanded; or (b) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded . . . ." 31 U.S.C. § 3729(b)(2)(A)(i)-(ii).

20.     "[T]he term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

21.     Each of the Plaintiff States has individually enacted a state version of the federal FCA. Each of the State FCAs is modeled after the federal FCA, and each contains provisions similar to those quoted above. As alleged in greater detail below, Relator asserts claims under the State FCAs for the Plaintiff States' respective portions of the Medicaid false claims detailed in this Complaint.

## STATEMENT OF FACTS

### I.     Background on Omnicare's Business.

22.     According to Item 1 of Omnicare's Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 for the Fiscal Year ended December 31, 2014 (hereinafter "2014 10-K"), "Omnicare operates the largest institutional pharmacy business in the United States, based on both revenues and the number of customers served."

23.     Omnicare's primary business is to fill prescriptions for patients who reside in SNFs, ALFs, and other facilities. According to its 2014 10-K, Omnicare's "customer mix" is "heavily concentrated in the senior market," and Omnicare claims to have "a high level of insight into geriatric pharmaceutical care."

24.     Omnicare filled approximately 111 million prescriptions for residents of facilities in 2014, and it derived approximately 74% of its 2014 total net sales from those prescriptions. In

2014, Omnicare's total net sales were $6.4 billion, with approximately $4.7 billion coming from the sale of legend drugs to elderly and disabled residents of facilities.

25.     According to its 2014 10-K, in 2014, approximately 65% of Omnicare's legend drug sales were paid for by federal and state government health programs. Specifically, in 2014, approximately 58% of Omnicare's legend drug sales were reimbursed by Medicare programs (including Part D & Part B), and approximately 7% of its total legend drug sales were reimbursed by Medicaid programs funded by both federal and state governments. In total, in 2014, Omnicare received more than $3 billion from Medicare and Medicaid programs from the sale of legend drugs.

26.     According to its 2014 10-K, Omnicare provides services to facilities "typically within a radius of approximately 150 miles of [its] pharmacy locations and maintain[s] a 24-hour, seven-days per week, on-call pharmacist service for emergency dispensing, delivery, and consultation with the facility's staff or attending physician."

27.     Omnicare's business approach relies heavily on "leverage" and "automation." According to Omnicare: "The use of automation within our pharmacies leverages our size and, we believe, distinguishes us from our competitors by reducing dispensing costs while improving our dispensing accuracy." *See* 2014 10-K, Item 1.

28.     Omnicare has a team of sales representatives who solicit business from SNFs, ALFs and other facilities. Omnicare contracts directly with hundreds of SNFs, ALFs and other facilities to provide prescription drugs to elderly and disabled residents of those facilities (more than 1.4 million residents, in total). The facilities solicited by Omnicare consist primarily of SNFs and ALFs.

29.     SNFs are healthcare facilities that meet certain criteria for accreditation established by the Social Security Act and which qualify for Medicaid and Medicare reimbursement for skilled nursing care. Law requires that the care of every SNF patient be under the supervision of a physician, that a physician be available on an emergency basis, that records of the condition and care of every patient be maintained, and that nursing services be available 24 hours a day. Under the law, SNFs also must be properly licensed to hold an inventory of prescription drugs and must have appropriately secured space for storing and dispensing those drugs, including but not limited to locked rooms for storing the drugs and secure medication carts for use when distributing those drugs. In addition, the law requires that SNFs employ at least one full-time Registered Nurse (who serves as the Director of Nurses) and have a consulting pharmacist on its staff. At SNFs, prescription medications are carefully stored and distributed. At least once every 30 days, a SNF resident's physician must specifically approve the medications for the SNF patient on the patient's chart. These chart orders are then used (like a prescription) as the basis for dispensing legend drugs to those patients.

30.     In contrast to SNFs, which are healthcare facilities, ALFs are *residential* facilities for elderly and disabled individuals, which employ certain staff to assist residents with activities of daily living ("ADLs"). Unlike SNFs, ALFs are not required to provide 24-hour nursing care. In addition, unlike SNFs, which can prescribe medications through chart orders signed by an attending physician who is responsible for the care of the SNF resident, ALFs cannot use chart orders. Rather, ALF staff members typically work with individual residents to ensure that they make their doctor's appointments (an activity considered an ADL). Thus, most residents of ALFs, like the many millions of other Americans who do *not* reside in SNFs, receive valid

prescriptions from their physicians directly and submit them to a local licensed pharmacy so that the prescribed legend drugs can be dispensed lawfully.

## II.     Omnicare's Failure to Meet Its Regulatory Compliance Obligations.

31.     Despite being the largest institutional pharmacy in the United States, having more than $6 billion in total net sales annually, Omnicare has failed to develop the operational systems and procedures necessary to ensure regulatory compliance.

32.     The fact that Omnicare is a repeat offender is undeniable. Since 2006, Omnicare has been the subject of more than 20 lawsuits brought under the federal FCA. These lawsuits have involved many different types of knowing regulatory compliance failures and legal violations. Since 2006, Omnicare has paid more than $273 million to settle *FCA claims alone*. However, this represents less than 0.5% of Omnicare's total net sales revenue over the same time period.

33.     According to its Quarterly Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 for the for the first quarter of 2015, Omnicare budgeted more than $10 million to address pending litigation matters, including *qui tam* lawsuits and regulatory compliance actions. Although $10 million is a substantial amount, given Omnicare's regulatory track record and litigation history, that amount is not enough to deter Omnicare. Indeed, $10 million is less than 6/1000s (or 0.6%) of the $1.6 billion in net revenue that Omnicare generated in the first quarter of 2015. If Omnicare knows it can ignore the law and still keep 99.4% of its multi-billion dollar annual revenue stream, it unquestionably will continue to violate the law.

34.     In addition, Omnicare was recently sued in a regulatory proceeding brought by the United States Drug Enforcement Agency ("DEA") in response to Omnicare's mishandling of Schedule II controlled substances. In the DEA case, Omnicare agreed to pay $50 million in civil penalties to resolve allegations that it distributed pain pills (Schedule II controlled substances) to

SNF residents, even though the residents did not have valid prescriptions for those particular drugs. Unlike the present case, the DEA case did not involve residents of ALFs. Nor did it involve the wide breadth of legend drugs at issue in this case

35.     Even the $50 million paid by Omnicare in the DEA case has not had a meaningful impact. The unfortunate reason is clear. Although this *one-time* $50 million obligation is substantial, it pales in comparison to an *annual* revenue stream of more than $6 billion. Omnicare, therefore, made a choice. Rather than bring itself into compliance with federal and state laws regulating the distribution of legend drugs, including controlled substances -- the abuse and illegal sale of which are very serious and growing problems in the United States -- Omnicare decided to budget for and absorb the multi-million dollar civil judgments, penalties and forfeitures it incurs annually, treating them as a mere cost of doing business.

36.     Omnicare prides itself on the automated processes it has developed and uses to fill hundreds of thousands of prescriptions annually for elderly and disabled Medicare and Medicaid patients. When developing these automated systems, however, Omnicare routinely ignores its legal duties regarding the distribution of legend drugs. Omnicare is not delivering "widgets." It is delivering potentially highly dangerous and very expensive controlled substances and other legend drugs (which are paid for in large part by the United States and the Plaintiff States). Despite the fact that Omnicare is the nation's largest institutional pharmacy and even though it certainly understands the important role it plays in supplying legend drugs (including controlled substances) to millions of Americans, Omnicare has consistently ignored the law and knowingly developed and used its automated pharmacy system to fill prescriptions in an illegal manner, resulting in large quantities of legend drugs being sold and distributed illegally throughout the United States.

### III.   Omnicare's Cycle Fill Process.

37.     Omnicare routinely uses a computerized auto-refill system to refill prescriptions for millions of elderly and disabled residents of SNFs, ALFs and other facilities throughout the United States. Omnicare refers to this automated system as its "cycle fill" system. As Omnicare knows, however, its cycle fill system is seriously flawed and causes the creation of false prescriptions. By creating these false prescriptions, Omnicare's cycle fill system unlawfully creates and fills tens (or even hundreds) of thousands of prescriptions for legend drugs annually.

38.     Under federal and state laws, Omnicare is prohibited from authorizing or filling orders for legend drugs (including controlled substances) without a valid prescription. Yet, despite knowing this basic legal obligation, Omnicare has developed, implemented and regularly relies on its cycle fill system to improperly authorize and instruct Omnicare pharmacists to refill legend drug orders when there are no valid prescriptions for the drugs.

39.     Recently, and during the course of his employment as the Pharmacist-in-Charge for Omnicare's Albuquerque, New Mexico pharmacy, Relator discovered that Omnicare's cycle fill system routinely processes prescription refill orders for ALF residents month after month (sometimes for years) after their prescriptions have expired. Relator brought this issue to the attention of Omnicare's corporate management, including Omnicare's Regional Compliance Officer, Mr. Scott Huhn, who is responsible for ensuring that Omnicare's operating procedures (including its cycle fill system) comply with applicable federal and state laws. Still, Omnicare has taken no steps to correct the problem.

40.     Omnicare's automated cycle fill system was developed, programed, and is maintained by Omnicare in a manner that treats all cycle fill orders the same, regardless of whether the individual who needs the legend drugs resides at a SNF or an ALF.

41.     Omnicare uses its cycle fill process as a sales tool, and it routinely seeks out and enters into contracts with ALFs by pointing to the convenience of cycle fill. As a result, Omnicare's cycle fill process automatically fills hundreds of thousands of prescriptions annually for residents of ALFs. Attached hereto as *Exhibit A* is a true and correct copy of Omnicare sales presentation material titled "Medication Management in Assisted Living" dated February 13, 2013, which discusses Omnicare's automated cycle fill process and demonstrates that Omnicare actively promotes the benefits of its automated processes when soliciting business from ALFs.

42.     Since February 1, 2008, Omnicare's standard process for refilling prescriptions for ALF residents has been governed by written standard operating procedures ("SOPs"). A true and correct copy of the current Cycle Fill SOP is attached hereto as *Exhibit B*.

43.     Omnicare's Cycle Fill SOP requires Omnicare representatives to provide facility administrators with a form titled: "Authorization for Cycle Fill or Anniversary Fill" (hereinafter "Cycle Fill Authorization"). A true and correct copy of this standard form is attached hereto as *Exhibit C.*

44.     Under Omnicare's Cycle Fill SOP, ALF administrators are asked to review and sign Cycle Fill Authorizations on a regularly scheduled basis chosen by the ALF, such as once a week, once every two weeks, or once a month. The ALF administrator confirms the "resident census" for the ALF, noting any changes on the form. If the ALF administrator is aware of any change to the "payor status" for a resident, it also notes that change on the Cycle Fill Authorization form. The ALF administrator then signs the completed Cycle Fill Authorization form and returns it to the Omnicare pharmacy responsible for its geographic region.

45.     Then, on a regular schedule chosen by the facility (*e.g.*, once a week, every two weeks, or once a month), the cycle fill system is "run" for each facility. In total, through the

18

cycle fill process, Omnicare causes hundreds of thousands of prescriptions for legend drugs to be filled annually. Many of these prescriptions are *false* and automatically generated (using automatically generated but *false* prescription numbers) by Omnicare's pharmacy dispensing system even though the quantity of drugs authorized by a prior prescription has been exhausted and there is no valid prescription authorizing any additional drugs to be dispensed.

## IV. **Omnicare's Cycle Fill System Automatically Generates and Authorizes New Prescriptions Even When the Total Prescribed Quantity for a Prior Prescription Has Been Dispensed and No New Prescription Has Been Authorized by a Physician.**

46. The cycle fill process begins with data entry. When Omnicare receives a new prescription from a cycle fill customer (*i.e.* the facility), it uses data processing staff to enter prescription information into Omnicare's computer system. Most Omnicare pharmacies use the OmniDX pharmacy dispensing system. Others use a pharmacy dispensing system called Oasis.

47. As Omnicare knows, when a physician prescribes or orders legend drugs for a patient, that physician is legally obligated by state pharmacy laws to provide the required elements of a prescription, including (among other information) the specific total "quantity" of drug being prescribed. Put another way, the total "quantity" prescribed is one of the basic required elements of a valid prescription under state prescription laws.

48. Omnicare has a large staff of employees who receive new prescriptions and enter information about those prescriptions into Omnicare's pharmacy dispensing system. These Omnicare employees, working in cubicles at various pharmacy locations throughout the county, are prompted by Omnicare's pharmacy dispensing system to enter (among other elements of the prescription) the specific total *quantity* of the legend drug being prescribed.

49. For example, if a physician prescribes a 30-day supply of a statin drug to treat high cholesterol, with 2 refills, an Omnicare employee could enter into the pharmacy dispensing

system "90" for the total quantity of the drug prescribed. Alternatively, that employee also could enter "30" for the quantity prescribed, and indicate that "2 refills" are authorized. In either case, the total prescribed quantity of the drug should be 90. Entering the quantity of legend drugs prescribed into Omnicare's pharmacy dispensing system is critical to keep the pharmacy from dispensing more drugs to a patient than the physician ordered. In the example above, when a total of 90 tablets have been dispensed to the patient based on the prescription, a new physician prescription is needed before any additional medication can be lawfully dispensed to that patient.

50.     However, when it developed its computerized cycle fill system, Omnicare knowingly built into that system a process by which prescriptions are repeatedly authorized for refills, even when the total quantity of drugs prescribed by the physician already has been dispensed.

51.     For example, continuing the statin drug example from above, after the 90 tablets prescribed by the physician have been dispensed, Omnicare's cycle fill system should not dispense any more drugs until a new prescription is obtained from the patient's physician. However, Omnicare's cycle fill software will *automatically* authorize another 30-day supply, *again and again*, regardless of whether a new prescription is ever obtained from the patient's physician or any other medical practitioner who is authorized to write prescriptions. As a result, in some cases, Omnicare's cycle fill system will authorize refills of prescriptions for months or even years based on a single prescription for a limited quantity of drugs. As a result, where a doctor *specifically* authorizes a 30-day supply of a prescription drug *without refills*, Omnicare's cycle fill computer system will allow that prescription to be dispensed month after month, even when no new prescription has been issued by a licensed practitioner.

52.     Omnicare's flawed computer system is not only dangerous to patients (as it allows the routine dispensing of legend drugs without requiring a physician to assess the efficacy of the drug or to evaluate the patient for potentially serious side effects), it creates many opportunities for fraud and abuse. It allows Omnicare to consistently bill third-party payors, including government programs such as Medicare and Medicaid, for drug refills *never authorized by a physician or other licensed practitioner*. It also creates opportunities for drugs (including controlled substances) to be delivered (and potentially misused, misappropriated, or sold illegally) even though no licensed practitioner has authorized the continuing use of the legend drugs.

53.     If Omnicare's automated cycle fill system worked properly and were consistent with industry standards, it would *not* authorize *any* prescription refills once the total quantity of drugs prescribed by a physician had been distributed to the patient. Rather, it would flag those refill requests as ones that cannot be honored unless additional action is taken. If such a process were followed, the pharmacy staff would be prompted to contact the prescriber to request authorization for an additional supply (*i.e.*, 30 days) before those legend drugs were dispensed and before false payment requests were submitted to Medicare and Medicaid through Omnicare's pharmacy dispensing program, OmniDX. If pharmacy staff was notified in advance that no valid prescription existed, then they would *not* dispense the drugs and there would be no false payment demands made to Medicare and Medicaid. Rather, the pharmacy staff would call the prescribing physicians/practitioners, who in turn would make medical determinations, based on their knowledge of the patient's health conditions, about whether additional refills should be authorized, or the practitioner might require the patient to make an appointment so that the

practitioner can evaluate whether the drug is working effectively and not causing unintentional adverse reactions.

54.     By automatically authorizing a new 30-day supply, *time and again*, without obtaining prescriber authorization, Omnicare's cycle fill system is intentionally designed to ensure that a steady supply of prescription drugs flows to an ALF and its residents, regardless of whether the total prescribed quantities already have been dispensed. This is financially advantageous to Omnicare (which continues to sell drugs, month after month, uninterrupted) and administratively convenient for the ALFs (which can continue to obtain legend drugs for their residents uninterrupted, without needing to assist their residents to ensure that they make and keep their appointments with doctors), but it intentionally ignores and disregards a most basic tenet of all pharmacy regulation – namely, that legend drugs cannot be supplied or distributed without a valid prescription.

55.     To build itself into a business that generates more than $6 billion in revenue annually, Omnicare has developed and established automated business processes, like the cycle fill process, that are designed to make drug ordering (and reordering) as easy as possible for the facilities, which Omnicare regards as its true customers, rather than the elderly and disabled individuals who reside in those facilities. But, Omnicare's processes make legend drug ordering too easy and disregard the federal and state regulatory framework designed to protect the health and safety of the general public. Omnicare's focus on making everything simple for facilities comes at a serious price – specifically, it comes by ignoring federal and state regulations that are intended to ensure the financial integrity of government programs that pay for those legend drugs (including Medicare and Medicaid), as well as laws that are designed to keep legend drugs from being misused and distributed without prescriber authorization.

56.     The serious risks presented to millions of elderly and disabled patients are clear. There are good reasons that physicians are specifically required by law to specify the total *quantity* of legend drugs they are prescribing. Physicians need to see their patients regularly to ensure that the medications are being properly administered and monitored, that the drugs are continuing to be effective in treating the patients' medical conditions without untoward side effects, and that no changes to the medication therapy are needed. However, even after the Relator squarely presented these issues to Omnicare's corporate management, Omnicare refuses to acknowledge or address this fundamental problem.

57.     Omnicare and its sales employees specifically seek out ALFs to sign them up for the cycle fill process, as Omnicare recognizes that its ability to increase penetration within the ALF communities will be a substantial source of revenue growth for the foreseeable future.

58.     Rather than fix the cycle fill system so that it does not automatically authorize refills of ALF residents' prescriptions (even after the total prescribed quantity of legend drugs has been exhausted), Omnicare continues to utilize this unlawful automated system. If Omnicare fixed the computer system, the Relator and other Omnicare Pharmacists-in-Charge would be alerted by Omnicare's pharmacy dispensing system whenever an automated request was made to refill a prescription where the total prescribed quantity of legend drugs already had been dispensed. Then, Omnicare pharmacists and pharmacy technicians would be informed of the need to contact the practitioners to request refill authorization.

59.     Until recently, the Relator did not know that when prescriptions are automatically refilled by Omnicare's automated cycle fill system, there is no process in place to notify pharmacists that Omnicare's automated computer system has generated a false prescription record or that legend drugs are about to be dispensed by Omnicare's automated dispensing

system despite the fact that the total quantity prescribed by the practitioner already has been dispensed. Omnicare, on the other hand, knows that its automated cycle fill system creates these false prescriptions and illegally dispenses legend drugs (and makes an electronic request and obtains authorization for payment for those drugs through Medicare and Medicaid) when no valid prescription exists.

60.     The Relator discovered this issue when one of the facilities in his region was audited by a private third-party payor. The third-party payor asked the facility to provide copies of prescriptions associated with drugs dispensed and delivered to it through Omnicare's automated cycle fill process. When responding to this private payor's audit request, the facility found it did not have prescriptions for many of those drugs, and therefore asked the Relator to search Omnicare's records for the prescriptions. However, when the Relator searched Omnicare's records, he could not find the necessary prescriptions either. He could not find them because Omnicare's automated cycle fill computer system had automatically created new prescriptions even though the prescriber had never authorized the additional quantity of medication. In other words, Omnicare's automated cycle fill system caused legend drugs to be dispensed without a valid prescription.

61.     As the Relator continued to investigate this issue over a period of several weeks, he discovered that Omnicare's cycle fill system was intentionally designed to allow these additional quantities to be dispensed without prescriber authorizations. Indeed, Omnicare's cycle fill system was designed so that its computers simply "copy" the last prescription once the total prescribed quantity has been exhausted, thus creating a new (false) prescription record (with a *new prescription number* assigned) within Omnicare's pharmacy dispensing system each time the cycle fill is run. Month after month (potentially for years), these new "prescriptions" are

automatically generated by Omnicare's computer system for each new cycle period (*i.e.*, 2 weeks or 30 days), and a new *false* "prescription" and "prescription number" is also automatically created by Omnicare's dispensing system for each cycle (*i.e.*, each week, two weeks, or month, depending on how often the cycle fill process is run for that facility).

62.     In an effort to determine what was happening, the Relator attempted to manually refill (rather than relying on Omnicare's automated cycle fill feature) a handful of prescriptions that he knew had no authorized refills. When the Relator did this, Omnicare's computer system (correctly) told him that the total quantity prescribed had been dispensed, that no refills were authorized, and that he needed to contact the prescriber to obtain additional authorization. However, when the very same prescriptions were processed using Omnicare's automated cycle fill system (which Omnicare's Standard Operating Procedures require the Relator and other pharmacists to use, given the large volume of prescriptions being filled and refilled by Omnicare every month), Omnicare's computer system (incorrectly) automatically authorized the additional quantities of legend drugs to be dispensed.

63.     The Relator brought these issues to the attention of the Omnicare Information Solutions department by an e-mail dated April 29, 2015. Ms. Jody Goppelt of Omnicare Information Solutions responded with an e-mail dated Friday, May 1, 2015, stating that she discussed the issue with "her boss Jody Jordan" who, in turn, had then "posed a question to [Omnicare] programming about something [Ms. Jordan] found in the program related to checking on refills." As the Relator understood this, Ms. Jordan believed she had discovered a supposed "flaw" in Omnicare's computer code for the cycle fill program, which was allowing prescriptions to be improperly refilled month after month. Ms. Goppelt expressed her understanding of the urgency of the matter, stating in her e-mail to Relator: "I'm certain [Ms.

25

Jordan will] press for an answer if she doesn't hear back on Monday." True and correct copies of these e-mails are attached hereto as *Exhibit D*.

64.     Given this response, the Relator expected to hear back from Ms. Goppelt (who is located in Pennsylvania) or somebody else with the Omnicare Information Solutions Department on Monday, May 4, 2015. However, that did not happen. Instead, on Monday, May 4, 2015, the Relator received an e-mail from Mr. Scott Huhn, who is Omnicare's Regional Corporate Compliance Officer based in northern California. Mr. Huhn oversees regulatory compliance for dozens of pharmacies in Omnicare's Western division.

65.     According to Mr. Huhn, no additional physician authorization was needed to refill these prescriptions month after month because: "Prescriber authorization takes place at the SNF depending on the frequency of the attending practitioner visits and the signing of chart orders." *See* Mr. Huhn's May 4, 2015 e-mail, included in *Exhibit D* hereto. In other words, Mr. Huhn was (misleadingly) telling the Relator that there was no "flaw" in the cycle fill system and that Relator need not worry about refill authorizations because the physicians seeing patients *at SNFs* were authorizing ongoing prescription refills with chart orders.

66.     As Ms. Goppelt and Mr. Huhn knew, however, the question was not whether the prescriptions going to *the SNFs* were properly authorized, but whether the legend drugs being delivered under the cycle fill process to *the ALFs* (which, unlike SNFs, are *residential* communities rather than health care facilities) were properly authorized. Relator was concerned because unlike at SNFs (which are staffed by at least one Registered Nurse, who can lawfully convey prescriptions as the "agent" of a SNF physician), the person signing Cycle Fill Authorizations on behalf of ALFs is often an office administrator or some other administrative

employee (having no medical training, and certainly not acting as an "agent" of any physician) who cannot lawfully authorize any prescription refills.

67.     Because the Relator was concerned, he asked Ms. Goppelt of the Omnicare Information Solutions department to generate for him a report that would identify the "problematic" prescriptions, meaning those for which Omnicare's automatic cycle fill computer program was continuing to dispense even though the total quantity of drugs originally prescribed had been exceeded. The Relator wanted to identify the problematic prescriptions so that his pharmacy staff could contact the licensed practitioners and request refill authorizations. This should have been an easy report for Omnicare's Information Solutions Department to create.

68.     Ms. Goppelt initially indicated that creating a list of "problematic" prescriptions would not be difficult, and that she would get Relator such a list quickly. However, even though Ms. Goppelt understood the urgency of Relator's request and although Omnicare was capable of generating the requested report the same day, Relator did not hear back from Ms. Goppelt for more than a week. Then, finally, on May 15, 2015, after additional prompting by the Relator, Ms. Goppelt provided the Relator with two spreadsheets that were different than what he had requested. Instead of giving Relator a list of the "problematic" prescriptions, as promised, she provided him with spreadsheets identifying *every* prescription in Omnicare's pharmacy dispensing system that was being refilled through the Relator's pharmacy using Omnicare's cycle fill process. This information effectively "buried" the Relator and certainly was not what the Relator had requested.

69.     The legend drugs that are being improperly dispensed without a valid prescription, as described above, do not include Schedule II controlled substances for purposes of the CSA. For prescriptions regarding Schedule II controlled substances, original hard copy

prescriptions are required and Schedule II controlled substances therefore are not eligible for Omnicare's cycle fill system. However, Omnicare's cycle fill system improperly "copies" and automatically creates new prescriptions for certain controlled substances, including Schedule III, IV and V controlled substances.

### V.    Omnicare's False Claims Associated with the Cycle Fill System.

70.    In 2003, Congress passed the Medicare Prescription Drug, Improvement, and Modernization Act ("MMA"), Pub. L. 108-173, 117 Stat. 2066, which established a voluntary prescription drug benefit program for Medicare enrollees known as Medicare Part D.  An individual is eligible to enroll in Part D if the individual lives in the service area of a Part D plan and is entitled to Medicare benefits under Part A or enrolled under Part B.  42 U.S.C. § 1935w-101(a)(3)(A); 42 C.F.R. § 423.30(a).  The Part D benefits program became effective January 1, 2006.  42 U.S.C. § 1395w-101(a)(2).

71.    Unlike coverage in Medicare Parts A and B, Part D coverage is not provided within the traditional Medicare program.  Medicare Part D is based on a private market model. Medicare contracts with private entities known as Part D Plan Sponsors to administer prescription drug plans.

72.    Part D benefits are delivered by a Part D Plan Sponsor, which can be either a prescription drug plan, a Medicare Advantage organization that offers a Medicare Advantage prescription drug plan (MA-PD plan), a Program of All-Inclusive Care for the Elderly ("PACE") organization offering a PACE plan including qualified prescription drug coverage, or a cost plan offering qualified prescription drug coverage.  42 C.F.R. § 423.4.

73.    When a pharmacy such as Omnicare dispenses a prescription drug to a Medicare beneficiary, it submits an electronic claim to the beneficiary's Medicare Part D plan and receives reimbursement from the Part D Plan Sponsor for the costs not paid by the beneficiary.

74.     The Part D Plan Sponsor then notifies the Centers for Medicare & Medicaid Services ("CMS"), which is part of the United States Department of Health and Human Services ("HHS"), that a drug has been purchased and dispensed through a document known as a Prescription Drug Event ("PDE") record, which includes data elements about the drug dispensed, the prescription, and the payment to the pharmacy.

75.     The PDE includes 37 separate fields of data, including information on the service provider of the drug (fields 10 and 11), the prescriber of the drug (fields 13 and 14), the quantity dispensed and days supply of the drug (fields 18 and 19), and whether or not the drug is covered under the Medicare Part D benefit (field 22).

76.     Payments to a Part D Plan Sponsor are conditioned on the provision of information to CMS that is necessary for CMS to administer the Part D program and make payments to the Part D Plan Sponsors for qualified prescription drug coverage. 42 C.F.R. § 423.322. CMS's instructions for the submission of Part D prescription PDE claims data state that "information . . . necessary to carry out this subpart" includes the data elements of a PDE. *See* "Updated Instructions: Requirements for Submitting Prescription Drug Event Data (PDE)" (April 27, 2006).

77.     PDE records are an integral part of the process that enables CMS to administer the Part D benefit. CMS relies on the information in all 37 data fields of a PDE record to process payments and to validate claims. *Id.* at 5-6.

78.     Each PDE submitted to CMS is a summary record that documents the final adjudication of a dispensing event based upon claims received from pharmacies and serves as the request for payment for each individual prescription submitted to Medicare under the Part D program. The data contained in PDEs are data related to the payment of claims.

79.     In addition, CMS uses the information in the PDE at the end of the payment year to reconcile advance payments to the Part D Plan Sponsor with the actual costs the plan sponsor incurred. *See id.*

80.     Throughout the year, CMS makes prospective payments to Part D Plan Sponsors for three subsidies based on the Sponsors' approved bids: (1) the direct subsidy designed to cover the Sponsor's cost of providing the benefits; (2) the low-income cost-sharing subsidy; and (3) the reinsurance subsidy.

81.     The direct subsidy (a monthly capitated payment) is paid to the Part D Plan Sponsor in the form of advance monthly payments equal to the Part D Plan's standardized bid, risk adjusted for health status as provided in 42 C.F.R. § 423.329(b), minus a monthly beneficiary premium as determined in 42 C.F.R. § 423.315(b). In other words, CMS pays a monthly sum to the Part D Plan Sponsor for each Part D beneficiary enrolled in the Plan.

82.     CMS also makes payments to the Part D Plan Sponsor for premium and cost-sharing subsidies on behalf of certain subsidy-eligible individuals as provided in 42 C.F.R. § 423.780 and 42 C.F.R. § 423.782. Cost-sharing subsidies for qualifying low-income individuals are called "Low-Income Cost-Sharing Subsidies" ("LICS") and are documented and reconciled using PDE data submitted to CMS.

83.     The reinsurance subsidy is paid to the Part D Plan Sponsor to cover the Government's share of drug costs above an enrollee's catastrophic threshold.

84.     Part D Plan Sponsors who fail to submit required claims-level information contained in the PDE to CMS risk having to return monthly payments to CMS during reconciliation. *See* 42 C.F.R. § 423.343(b), (c)(2) and (d)(2). In addition, Part D Plan Sponsors are responsible for correcting any submitted PDE data that it determines is erroneous. *See*

"Updated Instructions: Requirements for Submitting Prescription Drug Event Data (PDE)" (April 27, 2006).

85.     After the close of the plan year, CMS is responsible for reconciling the prospective payments to the Part D Plan Sponsor's actual allowable costs to calculate final payments and risk-sharing amounts. CMS determines the Sponsor's actual allowable costs by relying upon the data elements submitted by Sponsors in their PDE records.

86.     In order to receive Part D funds from CMS, Part D Plan Sponsors, their authorized agents, employees, and contractors (including pharmacies) are required to comply with all applicable federal laws, regulations, as well as CMS instructions.

87.     By statute, all contracts between a Part D Plan Sponsor and the Department of Health and Human Services must include a provision whereby the Plan Sponsor agrees to comply with the applicable requirements and standards of the Part D program as well as the terms and conditions of payment governing the Part D program. 42 U.S.C. § 1395w-112.

88.     Medicare Part D Plan Sponsors must also certify in their contracts with CMS that they agree to comply with all federal laws and regulations designed to prevent fraud, waste, and abuse. 42 C.F.R. § 423.505(h)(1).

89.     CMS regulations require that all subcontracts between Part D Plan Sponsors and downstream entities contain language obligating the pharmacy to comply with all applicable federal laws, regulations, and CMS instructions. 42 C.F.R. § 423.505(i)(4)(iv).

90.     Omnicare, as a subcontractor for Part D Plan Sponsors, is required to comply with all applicable federal laws, regulations, and CMS instructions, which include the CSA, the Social Security Act, and regulations that define the requirements of a valid prescription. 42 C.F.R. § 423.505(i)(4)(vi).

91.     A Part D Plan Sponsor is required by federal regulations to certify the accuracy, completeness and truthfulness of all data related to each payment.   This provision, entitled "Certification of data that determine payments," provides in relevant part, as follows:

> (1) General Rule. As a condition for receiving a monthly payment . . . the Part D Plan sponsor agrees that its chief executive officer (CEO), chief financial officer (CFO), or an individual delegated the authority to sign on behalf of one of these officers, and who reports directly to the officer, must request payment under the contract on a document that certifies (based on best knowledge, information and belief) the accuracy, completeness, and truthfulness of all data related to payment. The data may include specified enrollment information, claims data, bid submission data, and other data that CMS specifies.
>
> . . . .
>
> (3) Part D Sponsor certification of Claims Data:  The CEO, CFO, or an individual delegated with the authority to sign on behalf of one of these officers, and who reports directly to the officer, must certify (based on best knowledge, information and belief) that the claims data it submits under § 423.329(b)(3) (or for fallback entities, under § 423.871(f)) are accurate, complete and truthful and acknowledge that the claims data will be used for the purpose of obtaining Federal reimbursement.

42 C.F.R. § 423.505(k)(1) and (3).

92.     All approved Part D Plan Sponsors who received payment under Medicare Part D during the relevant benefit years submitted the required attestations for data that related to those payments.  42 C.F.R. § 423.505(k).

93.     The "Certification of data that determine payments" provision of the applicable regulation further provides: "[i]f the claims data are generated by a related entity, contractor, or subcontractor of a Part D plan sponsor, the entity, contractor, or subcontractor must similarly certify (based on best knowledge, information, and belief) the accuracy, completeness, and

truthfulness of the data and acknowledge that the claims data will be used for the purposes of obtaining Federal reimbursement." 42 C.F.R. § 423.505(k)(3).

94.      Compliance with the requirement that the PDE data is "true, accurate, and complete" is a condition of payment under the Medicare Part D program.

95.      PDEs submitted to Medicare for drugs dispensed without a valid prescription do not contain accurate, complete and truthful information about all data related to payment.

96.      It is a precondition for payment under Medicare Part D that prescription drugs provided to Medicare beneficiaries be dispensed upon a valid prescription under the law.

97.      Under Medicare Part D, CMS will only pay for drugs that meet the definition of "covered Part D drug."

98.      A "covered Part D drug" is a drug that "may be dispensed only upon a prescription." 42 U.S.C. § 1395w-102(e).  A prescription drug is not a "covered Part D drug" unless it is dispensed upon a valid prescription.  *See* 42 C.F.R. 423.104(h) (requiring that Part D drugs be "dispensed upon a valid prescription" for there to be coverage).

99.      A Part D Plan Sponsor may only provide benefits for Part D prescription drugs if those drugs are dispensed upon a valid prescription in accordance with law.  A valid prescription is one that complies with all applicable state law requirements regarding what constitutes a valid prescription. This includes, but is not limited to, the requirement that a prescription must state the total "quantity" of the drug being prescribed.

100.     Similarly, under the Medical Assistance Program, which is known as Medicaid, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396w-2, the federal government created a government program that provides medical assistance for poor, disabled and vulnerable individuals. CMS oversees the Medicaid Program, and promulgates rules and regulations for all

participants. Medicaid is a state-administered program and each state also sets rules, regulations and guidelines regarding eligibility and services, but the states and the United States jointly fund Medicaid. *See* 42 U.S.C. § 1396b.

101.    The federal portion of a state's Medicaid payments is based on a state's per capita income compared to the national average. 42 U.S.C. § 1396d(b). The federal portion varies from state to state, from approximately 50% to 83%.

102.    Medicaid pays for outpatient prescription drugs on a per item basis, under a simple direct billing system. When Omnicare's pharmacies fill prescriptions, they transmit electronic claims to the local state Medicaid administrators, who then process the claims and tender payment to Omnicare. Each state Medicaid program sets its own payment rate for outpatient drugs, although they are generally set at the Average Wholesale Price ("AWP") less 15%, plus a dispensing fee of approximately $2.50.

103.    Medicaid's coverage extends only to "prescribed drugs" and does not include coverage for legend drugs (including controlled substances) that are issued without a valid prescription. *See* 42 U.S.C. § 1396d(a)(12) (Medicaid covers "prescribed drugs").

104.    The wrongful submission of claims to Medicaid for payment is actionable under both the federal FCA and the State FCAs because the payments of those claims are made with both state and federal funds.

105.    The *sine quo non* of state and federal Medicaid payments is that medications must be provided lawfully and under a valid prescription. Medicaid's coverage for outpatient drugs excludes medications that are dispensed without a valid prescription.

**VI.** **Omnicare Knowingly Required Pharmacies Throughout the Nation to Use Its Flawed Automated Cycle Fill System, Which Caused False Claims to Be Submitted to Medicare and Medicaid Programs Around the Country, Including in New York and Other Plaintiff States.**

106.   Since at least January 1, 2006, Omnicare has required that its pharmacies around the country use Omnicare's automated cycle fill system. During that time, Omnicare's sales representatives solicited ALFs and other facilities and entered into agreements with those facilities whereby Omnicare promised that its Omnicare pharmacies would fill and refill prescriptions using Omnicare's automated cycle fill system.

107.   During the relevant time period, Omnicare has required that its automated cycle fill system be used by Omnicare pharmacies throughout the country, including in New York and in this judicial district.

108.   At all relevant times, Omnicare knew that its automated cycle fill system was flawed, that it was creating false prescriptions (using false prescription numbers), and causing false claims to be submitted to Medicare and Medicaid programs throughout the country, including in New York and in this judicial district.

109.   Omnicare intentionally designed the cycle fill system to create new (false) prescriptions when the total prescribed quantity of a legend drug had been dispensed.

110.   When it developed the cycle fill system, Omnicare knew it would be used in part to refill prescriptions at SNFs. SNFs are healthcare facilities (similar in some respects to hospitals) where the medical conditions of all patients are supervised and regularly documented by licensed physicians and other medical practitioners, who create chart orders authorizing the patient's use (or continued use) of legend drugs. Omnicare's cycle fill system was developed by Omnicare knowing that physicians regularly reviewed SNF patient medications and prescribed drugs.

111.    Omnicare then decided it also would include ALFs in the cycle fill system. There are an estimated 25,000 ALFs in the United States, and the number of ALFs significantly exceeds the number of SNFs. Thus, by extending its cycle fill program to ALFs, Omnicare expanded its opportunities for revenue growth.

112.    However, unlike SNFs, ALFs are considered residential communities (rather than healthcare facilities). In this residential environment, there are employees to assist residents with activities of daily living (ADLs), such as reminding a patient to take his or her medication. (In an ALF, unlike in a SNF, the staff cannot and will not dispense legend drugs or administer them to a patient; rather, in an ALF, the staff may hold the medications for the residents and remind them to take medications that have been prescribed by that particular resident's ordinary physician/medical practitioner.)

113.    At all relevant times between January 1, 2006 and the present, Omnicare understood the important distinction between SNFs and ALFs. It always has known that ALFs (unlike SNFs) are residential communities. It also has known that ALFs (unlike SNFs) are not staffed by physicians or licensed practitioners who can issue chart orders or write prescriptions for legend drugs.

114.    At all relevant times between January 1, 2006 and the present, Omnicare knew that, by including residents of ALFs in its automated cycle fill system and promoting its cycle fill automated program to ALF administrators, it was causing many thousands of prescriptions to be created for ALF residents even though the total prescribed quantity of the legend drug already had been dispensed.

115.    At all relevant times between January 1, 2006 and the present, Omnicare knew that its automated cycle fill system creates new (false) prescriptions using new (false)

prescription numbers and thereby caused legend drugs to be dispensed to many thousands of ALF residents without a valid prescription.

116.   At all relevant times between January 1, 2006 and the present, Omnicare knew that its automated dispensing system created false records, including false PDE records, which were submitted to federal and state government agents, contractors and employees responsible for administering the Medicare and Medicaid programs.

117.   At all relevant times between January 1, 2006 and the present, and as specifically alleged herein, Omnicare created and caused the creation of hundreds of thousands of false PDEs, which falsely stated and represented that prescribed legend drugs (including controlled substances) were dispensed pursuant to a valid prescription and were covered by the Medicare and Medicaid programs. When these false records were made and submitted to the federal and state government agents and employees who administer Medicare and Medicaid, Omnicare knew that the PDEs were false because those PDEs sought payment for legend drugs that were dispensed without valid prescriptions, and therefore were not covered drugs reimbursable under the Medicare and Medicaid programs.

118.   At all relevant times between January 1, 2006 and the present, Omnicare knowingly caused false claims to be presented for payment or approval under the Medicare and Medicaid programs.

119.   At all relevant times between January 1, 2006 and the present, Omnicare knowingly made, used, and caused to be made and used, false records and statements material to a false or fraudulent claim, including the false prescriptions, false prescription numbers and false PDEs described above.

120.    Omnicare pharmacies operate in forty-seven states and the District of Columbia, including the Plaintiff States. Accordingly, the federal-state Medicaid programs in these states, as well as Medicare and other federal healthcare programs, have been damaged by Omnicare's misconduct. Omnicare has received and benefited from overpayments made by Medicare and Medicaid based on the false claims identified herein. Omnicare has in its possession claims data that will enable the parties to determine the total amount of the overpayments received by Omnicare.

### VII.    First Example of False Documents and False Claims.

121.    A first example of false documents being created and false claims being submitted involves a prescription for Metaxalone (also known by the brand name Skelaxin), a legend drug commonly used as a muscle relaxant. A prescription was written for a patient by a licensed prescriber on August 23, 2013. The patient's name is known to Relator, but is not being identified here for medical privacy reasons. True and correct copies of the prescription and pharmacy records (with the patient's identifying information redacted for privacy) pertaining to that prescription are attached hereto as *Exhibit E.*

122.    The total quantity prescribed on August 23, 2013 was "One Hundred Twenty TAB *with Zero refills*" (emphasis added) with instructions to take one tablet "four times daily" (or, in other words, a 30 day supply). Based on Omnicare's standard operating procedures, the elements of this prescription (including the total quantity prescribed of "120" tablets) were entered into OmniDX, Omnicare's pharmacy dispensing system.

123.    As shown by the attached prescription records, one hundred and twenty (120) "Skelaxin 800 MG" tablets were dispensed on August 27, 2013. Thus, as of August 27, 2013, the total prescribed quantity had been dispensed. Thereafter, if an effort had been made to *manually*

refill this prescription, the pharmacy dispensing system would have stated that no refills were available without additional authorization from the prescriber.

124.    However, based on Omnicare's standard operating procedures, this prescription was entered into Omnicare's automated cycle fill program, as the patient resided at an ALF at which Omnicare had promised the cycle fill feature. As a result, when the cycle fill process was run for this ALF on October 11, 2013, an additional quantity of 56 tablets was dispensed even though there was no new prescription. Then, when Omnicare's automated cycle fill process was run for this ALF on October 26, 2013, another 116 tablets were dispensed, again without a valid prescription. On November 24, 2013, another 120 tablets were dispensed without a valid prescription based on Omnicare's flawed cycle fill system.

125.    On December 12, 2013 and January 8, 2014, the patient's physician wrote new prescriptions that, like the August 27, 2013 prescription, prescribed "One Hundred Twenty TAB *with Zero Refills*" (emphasis added) of the "Skelaxin 800 MG" with instructions to take "four times daily." Copies of those prescriptions are included in *Exhibit E* hereto.

126.    Again, once these prescribed quantities were dispensed, no refills should have been allowed. However, based on Omnicare's automated cycle fill system, additional quantities (in addition to the quantities dispensed without a valid prescription as described in paragraph 124 above) were regularly dispensed to the patient, time and again, between February 2014 and May 2015. In other words, for well over a year, Omnicare's automated cycle fill process created new false prescriptions each month, including new false prescription numbers. As a direct result, based on the intentional "flaws" in Omnicare's pharmacy dispensing system, false PDEs were created and submitted to federal and state agents and employees responsible for administering the Medicaid and Medicare programs.

127.    For this one patient alone, Omnicare created false prescription records and caused at least nineteen false claims to be created and presented for payment to Medicare over a period of less than two years. As a direct result of these false claims, Medicare paid more than $10,000 for legend drugs that were dispensed without a valid prescription and, therefore, were not covered drugs for purposes of the Medicare program.

## VIII.    Second Example of False Documents and False Claims.

128.    A second example of false documents being created and false claims being submitted involves a twelve-month prescription renewal for Levothyroxine, a drug commonly used to treat thyroid disorders. The prescription renewal was written by the patient's physician on March 4, 2013. The patient's name is known to Relator, but is not being provided here for medical privacy reasons. True and correct copies of the prescription and pharmacy records (with the patient's identifying information redacted for privacy) pertaining to this prescription are attached hereto as *Exhibit F*.

129.    The total quantity prescribed on March 4, 2013 was "30 (thirty) tablet(s)" of Levothyroxine and "11 refills" with instructions to take one tablet daily. Based on Omnicare's standard operating procedures, the elements of this prescription (including the total quantity prescribed of 360 tablets) were entered into OmniDX, Omnicare's pharmacy dispensing system.

130.    As shown by the attached prescription records, the total amount prescribed (360 tablets) was dispensed by January 2, 2014. As of that date, if an effort had been made to refill the prescription *manually*, Omnicare's pharmacy dispensing system would have stated that no refills were available without additional authorization from the prescriber.

131.    However, even though the total quantity prescribed had been dispensed, for many months after January 2, 2014, Omnicare's cycle fill system created new false prescription and false prescription numbers every time the automated cycle fill process was run for this ALF.

132.    Here, the cycle fill process was run for the patient's ALF once per month. Each month after January 2, 2014, the cycle fill system copied the old prescription and created a new (false) prescription record to indicate (falsely) that there was a new prescription for another 30 day supply. For the 12 months *before* January 2, 2014, every time the prescription was refilled, the same valid prescription number was used each month. Once the 12 months had passed, however, the cycle fill system generated a new and different (false) prescription number every month.

133.    Based on these false prescriptions and false prescription numbers, Omnicare caused false PDE records to be created and submitted electronically to agents of Medicare and Medicaid falsely stating that Levothyroxine was a "covered" drug for purposes of Medicare, even though this legend drug was being dispensed, time and again, without a valid prescription.

134.    Since January 2, 2014, and up to the present, Omnicare's pharmacy dispensing system has caused new false prescriptions, along with new false prescription numbers, to be created every time the automated cycle fill program was run. As a result, new false PDE records were regularly created by Omnicare's automated pharmacy dispensing system and electronically submitted to Part D Plan Sponsors, all of whom were acting as agents or contractors of the United States (or who, alternatively, were recipients of federal funds) such that the submission of a false PDE to these Part D Plan Sponsors resulted in violations of the FCA.

IX.    **Third Example of False Documents and False Claims.**

135.    A third example of false documents being created and false claims being submitted involves a prescription for Montelukast (also known by various brand names, including Singulair), a legend drug commonly used for the treatment of asthma. The prescription was written by the patient's licensed prescriber on October 1, 2012. The patient's name is known to Relator, but is not being provided here for medical privacy reasons. True and correct copies of

the prescription and pharmacy records (with the patient's identifying information redacted for privacy) pertaining to this prescription are attached hereto as *Exhibit G*.

136.    The total quantity prescribed on October 1, 2012 was "30 (Thirty)" with "11 refills" with instructions to take one tablet daily. Based on Omnicare's standard operating procedures, the elements of this prescription (including the total quantity prescribed of 360 tablets) were entered into OmniDX, Omnicare's pharmacy dispensing system.

137.    As shown by the attached prescription records, the total amount prescribed (360 tablets) was dispensed by July 25, 2013. As of that date, if an effort had been made to refill the prescription *manually*, Omnicare's pharmacy dispensing system would have stated that no refills were available without additional authorization from the prescriber.

138.    However, even though the total quantity prescribed had been dispensed, for many months after July 25, 2013, Omnicare's cycle fill system created new false prescription and false prescription numbers every time the automated cycle fill process was run for this ALF.

139.    The prescriber authorized two refills on June 11, 2014, and those refills were processed and dispensed by December 16, 2014. Then, Omnicare's automated cycle fill system again began creating false prescriptions and false prescription numbers every time the cycle fill system was run for this facility.

140.    As a result, like with the other examples above, new false PDE records were regularly created by Omnicare's automated pharmacy dispensing system and electronically submitted to Part D Plan Sponsors, all of whom were acting as agents or contractors of the United States (or who, alternatively, were recipients of federal funds) such that the submission of a false PDE to these Part D Plan Sponsors resulted in violations of the FCA.

**X.**     **False Documents and False Claims Involving Schedule III, IV and V Controlled Substances.**

141.    As alleged herein, Omnicare knowingly designed its OmniDX pharmacy dispensing system in a manner that automatically creates false prescriptions and false prescription numbers so that it can dispense, without valid prescriptions, legend drugs to ALF residents. As a result, every week, Omnicare routinely dispenses legend drugs without valid prescriptions. Some of these legend drugs are Schedule III, IV and V controlled substances for purposes of the CSA.

142.    In the Relator's Omnicare pharmacy, he does not dispense controlled substances without receiving a valid original prescription, as required by federal law. However, given the issues he recently discovered with cycle fill creating false prescriptions for other legend drugs, he has investigated further to determine whether that system would also dispense Schedule III, IV and V controlled substances without valid prescriptions.

143.    As part of his investigation, the Relator attempted to refill a prescription for Alprazolam (also known by the brand name Xanax) *manually*, where he knew that the total prescribed quantity already had been dispensed. Alprazolam is a Schedule IV controlled substance used in the treatment of anxiety disorders. As expected, when the Relator attempted to refill the prescription manually, the OmniDX system indicated that no refills were allowed and it would not allow additional tablets to be dispensed without physician authorization.

144.    However, when the Relator tested how Omnicare's automated cycle fill system would handle this prescription, he discovered that it created a false prescription and false prescription number, just as with the legend drugs described above.

145.    There are many other Omnicare pharmacies that use the OmniDX system, including the automated cycle fill system, which Omnicare requires its branch pharmacies to use

when refilling prescriptions for SNFs and ALFs alike. The Relator does not currently have a specific example of a controlled substance being dispensed without a valid prescription based on Omnicare's automated cycle fill system because his New Mexico pharmacy has chosen not to use cycle fill when filling prescriptions for controlled substances. However, given the Relator's investigation and experience, he believes that Omnicare has dispensed controlled substances without valid prescriptions, as its automated cycle fill system is set up to allow it.

### COUNT I
### Federal False Claims Act
### 31 U.S.C. §3729(a)(1)[1986] and
### 31 U.S.C. § 3729(a)(1)(A)[2009]

146.    Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

147.    Defendant Omnicare knowingly submitted and caused the submission of false or fraudulent claims for payment or approval for drugs to agents, employees and contractors of the United States Government in violation of 31 U.S.C. §3729(a)(1)[1986], and 31 U.S.C. § 3729(a)(1)(A)[2009].[1]

148.    By virtue of the false or fraudulent claims that Omnicare presented, the United States has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim, together with an award of attorneys' fees, costs, disbursements and all other relief available under the False Claims Act and applicable law. In addition, as allowed by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the False Claims Act and applicable law.

---

[1] The False Claims Act was amended in 2009. As a matter of law, some of the 2009 amendments may be retroactive. Out of an abundance of caution, the Relator has cited both the pre-2009 and post-2009 versions of the False Claims Act.

## COUNT II
## Federal False Claims Act
## 31 U.S.C. § 3729(a)(1)(B)[2009]

149.  Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

150.  Defendant Omnicare knowingly made, used or caused to be made or used, false records or statements material to false or fraudulent claims to the United States Government. Defendant Omnicare' false reports caused the States and the District of Columbia to submit false and inflated claims for Medicaid payments to the United States in violation of 31 U.S.C. § 3729(a)(1)(B)[2009].

151.  By virtue of the false or fraudulent claims that Defendant Omnicare caused to be presented, the United States has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim, together with an award of attorneys' fees, costs, disbursements and all other relief available under the False Claims Act and applicable law.  In addition, as allowed by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the False Claims Act and applicable law.

## COUNT III
## California False Claims Act
## Cal Gov't Code § 12651(a)(7)

152.  Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

153.  This is a claim for treble damages and penalties under the California False Claims Act.

154.    By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the State of California, false or fraudulent claims for payment or approval.

155.    By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the California State Government to obtain payment from the State of California for false or fraudulent claims.

156.    By reason of the Defendant Omnicare's acts, the State of California has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim, together with an award of attorneys' fees, costs, disbursements and all other relief available under the California False Claims Act and applicable law.  In addition, as allowed by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the California False Claims Act and applicable law.

**COUNT IV**
**Colorado Medicaid False Claims Act**
**Colo. Rev. Stat § 25.5-4-303.5 *et seq.***

157.    Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

158.    This is a claim for treble damages and penalties under the Colorado Medicaid False Claims Act.

159.    By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the State of Colorado, false or fraudulent claims for payment or approval.

160.    By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the Colorado State Government to obtain payment from the State of Colorado for false or fraudulent claims.

161.    By reason of the Defendant Omnicare's acts, the State of Colorado has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim, together with an award of attorneys' fees, costs, disbursements and all other relief available under the Colorado Medicaid False Claims Act and applicable law.  In addition, as allowed by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the Colorado Medicaid False Claims Act and applicable law.

**COUNT V**
**Connecticut False Claims Act**
**Conn. Gen. Stat. § 4-274 *et seq.***

162.    Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

163.    This is a claim for treble damages and penalties under the Connecticut False Claims Act.

164.    By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the State of Connecticut false or fraudulent claims for payment or approval.

165.    By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the Connecticut State Government to obtain payment from the State of Connecticut for false or fraudulent claims.

166.    By reason of the Defendant Omnicare's acts, the State of Connecticut has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim, together with an award of attorneys' fees, costs, disbursements and all other relief available under the Connecticut False Claims Act and applicable law.  In addition, as allowed by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the Connecticut False Claims Act and applicable law.

**COUNT VI**
**Delaware False Claims and Reporting Act**
**Del. Code Ann. tit. 6, § 1201(a)(7)**

167.    Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

168.    This is a claim for treble damages and penalties under the Delaware False Claims and Reporting Act.

169.    By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the State of Delaware false or fraudulent claims for payment or approval.

170.    By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the Delaware State Government to obtain payment  from the State of Delaware for false or fraudulent claims.

171.    By reason of the Defendant Omnicare's acts, the State of Delaware has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim, together with an award of attorneys' fees, costs, disbursements and all other relief available under the Delaware False Claims and Reporting Act and applicable law.  In addition, as allowed

by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the Delaware False Claims and Reporting Act and applicable law.

**COUNT VII**
**Florida False Claims Act**
**Fla. Stat. § 68.082(2)(g)**

172.     Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

173.     This is a claim for treble damages and penalties under the Florida False Claims Act.

174.     By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the State of Florida false or fraudulent claims for payment or approval.

175.     By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the Florida State Government to obtain payment from the State of Florida for false or fraudulent claims.

176.     By reason of the Defendant Omnicare's acts, the State of Florida has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim, together with an award of attorneys' fees, costs, disbursements and all other relief available under the Florida False Claims Act and applicable law.  In addition, as allowed by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the Florida False Claims Act and applicable law.

## COUNT VIII
### Georgia False Medicaid Claims Act and Georgia Taxpayer Protection False Claims Act
### Ga. Code Ann. § 49-4-168.1(7) and § 23-3-120 *et seq.*

177.    Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

178.    This is a claim for treble damages and penalties under the Georgia False Medicaid Claims Act and the Georgia Taxpayer Protection False Claims Act.

179.    By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the State of Georgia false or fraudulent claims for payment or approval.

180.    By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the Georgia State Government to obtain payment from the State of Georgia for false or fraudulent claims.

181.    By reason of the Defendant Omnicare's acts, the State of Georgia has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim together with an award of attorneys' fees, costs, disbursements and all other relief available under the Georgia False Medicaid Claims Act, the Georgia Taxpayer Protection False Claims Act and applicable law.  In addition, as allowed by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the Georgia False Medicaid Claims Act, the Georgia Taxpayer Protection False Claims Act and applicable law.

## COUNT IX
## Hawaii False Claims Act
## Haw. Rev. Stat. §661-21(a)(7)

182.     Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

183.     This is a claim for treble damages and penalties under the Hawaii False Claims Act.

184.     By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the State of Hawaii false or fraudulent claims for payment or approval.

185.     By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the Hawaii State Government to obtain payment from the State of Hawaii for false or fraudulent claims.

186.     By reason of the Defendant Omnicare's acts, the State of Hawaii has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim, together with an award of attorneys' fees, costs, disbursements and all other relief available under the Hawaii False Claims Act and applicable law.  In addition, as allowed by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the Hawaii False Claims Act and applicable law.

## COUNT X
## Illinois Whistleblower Reward and Protection Act
## 74 Ill. Comp. Stat. 175/3(a)(7)

187.     Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

188.     This is a claim for treble damages and penalties under the Illinois Whistleblower Reward and Protection Act.

189.     By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the State of Illinois false or fraudulent claims for payment or approval.

190.     By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the Illinois State Government to obtain payment from the State of Illinois for false or fraudulent claims.

191.     By reason of the Defendant Omnicare's acts, the State of Illinois has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim, together with an award of attorneys' fees, costs, disbursements and all other relief available under the Illinois Whistleblower Reward and Protection Act and applicable law.  In addition, as allowed by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the Illinois Whistleblower Reward and Protection Act and applicable law.

**COUNT XI**
**Indiana False Claims and Whistleblower Protection Act and**
**Indiana Medicaid False Claims and Whistleblower Protection Act,**
**Ind. Code 5-11-5.5-2(b)(6) and § 5-11-5.7 *et seq.***

192.     Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

193.     This is a claim for treble damages and penalties under the Indiana False Claims and Whistleblower Protection Act and the Indiana Medicaid False Claims and Whistleblower Protection Act.

194.    By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the State of Indiana false or fraudulent claims for payment or approval.

195.    By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the Indiana State Government to obtain payment from the State of Indiana for false or fraudulent claims.

196.    By reason of the Defendant Omnicare's acts, the State of Indiana has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim together with an award of attorneys' fees, costs, disbursements and all other relief available under the Indiana False Claims and Whistleblower Protection Act, the Indiana Medicaid False Claims and Whistleblower Protection Act and applicable law.  In addition, as allowed by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the Indiana False Claims and Whistleblower Protection Act, the Indiana Medicaid False Claims and Whistleblower Protection Act and applicable law.

**COUNT XII**
**Iowa False Claims Act**
**Iowa Code § 685.1 *et seq.***

197.    Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

198.    This is a claim for treble damages and penalties under the Iowa False Claims Act.

199.    By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the State of Iowa false or fraudulent claims for payment or approval.

200.     By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the Iowa State Government to obtain payment from the State of Louisiana for false or fraudulent claims.

201.     By reason of the Defendant Omnicare's acts, the State of Iowa has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim together with an award of attorneys' fees, costs, disbursements and all other relief available under the Iowa False Claims Act and applicable law.  In addition, as allowed by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the Iowa False Claims Act and applicable law.

### COUNT XIII
### Louisiana Medical Assistance Programs Integrity Law
### La. Rev. Stat. Ann. § 46:438.3(C)

202.     Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

203.     This is a claim for treble damages and penalties under the Louisiana Medical Assistance Programs Integrity Law.

204.     By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the State of Louisiana false or fraudulent claims for payment or approval.

205.     By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the Louisiana State Government to obtain payment from the State of Louisiana for false or fraudulent claims.

206.   By reason of the Defendant Omnicare's acts, the State of Louisiana has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim together with an award of attorneys' fees, costs, disbursements and all other relief available under the Louisiana Medical Assistance Programs Integrity Law and applicable law.   In addition, as allowed by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the Louisiana Medical Assistance Programs Integrity Law and applicable law.

**COUNT XIV**
**Maryland False Health Claims Act**
**Md. Code. Ann., Health-Gen. § 2-601 *et seq.***

207.   Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

208.   This is a claim for treble damages and penalties under the Maryland False Health Claims Act.

209.   By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the State of Maryland false or fraudulent claims for payment or approval.

210.   By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the Maryland State Government to obtain payment from the State of Maryland for false or fraudulent claims.

211.   By reason of the Defendant Omnicare's acts, the State of Maryland has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim together with an award of attorneys' fees, costs, disbursements and all other relief available under the Maryland False Health Claims Act and applicable law.   In addition, as allowed by

statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the Maryland False Health Claims Act and applicable law.

**COUNT XV**
**Massachusetts False Claims Act**
**Mass. Gen. Laws ch. 12, § 5B(8)**

212.    Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

213.    This is a claim for treble damages and penalties under the Massachusetts False Claims Act.

214.    By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the Commonwealth of Massachusetts false or fraudulent claims for payment or approval.

215.    By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the Massachusetts Government to obtain payment from the Commonwealth of Massachusetts for false or fraudulent claims.

216.    By reason of the Defendant Omnicare's acts, the Commonwealth of Massachusetts has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim together with an award of attorneys' fees, costs, disbursements and all other relief available under the Massachusetts False Claims Act and applicable law.   In addition, as allowed by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the Massachusetts False Claims Act and applicable law.

## COUNT XVI
## Michigan Medicaid False Claims Act
## Mich. Comp. Laws § 400.607(3)

217.    Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

218.    This is a claim for treble damages and penalties under the Michigan Medicaid False Claims Act.

219.    By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the State of Michigan false or fraudulent claims for payment or approval.

220.    By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the Michigan State Government to obtain payment from the State of Michigan for false or fraudulent claims.

221.    By reason of the Defendant Omnicare's acts, the State of Michigan has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim, together with an award of attorneys' fees, costs, disbursements and all other relief available under the Michigan Medicaid False Claims Act and applicable law.  In addition, as allowed by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the Michigan Medicaid False Claims Act and applicable law.

## COUNT XVII
## Minnesota False Claims Act
## Minn. Stat. § 15C.02

222.    Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

223.     This is a claim for treble damages and penalties under the Minnesota False Claims Act.

224.     By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the State of Minnesota false or fraudulent claims for payment or approval.

225.     By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the Minnesota State Government to obtain payment from the State of Minnesota for false or fraudulent claims.

226.     By reason of the Defendant Omnicare's acts, the State of Minnesota has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim, together with an award of attorneys' fees, costs, disbursements and all other relief available under the Minnesota False Claims Act and applicable law.  In addition, as allowed by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the Minnesota False Claims Act and applicable law.

## COUNT XVIII
### Montana False Claims Act
### Mont. Code Ann. 17-8-403(1)(g)

227.     Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

228.     This is a claim for treble damages and penalties under the Montana False Claims Act.

229.    By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the State of Montana false or fraudulent claims for payment or approval.

230.    By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the Montana State Government to obtain payment from the State of Montana for false or fraudulent claims.

231.    By reason of the Defendant Omnicare's acts, the State of Montana has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim, together with an award of attorneys' fees, costs, disbursements and all other relief available under the Montana False Claims Act and applicable law.  In addition, as allowed by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the Montana False Claims Act and applicable law.

**COUNT XIX**
**Nevada Submission of False Claims to State or Local Government Act**
**Nev. Rev. Stat. § 357.040(1)(g)**

232.    Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

233.    This is a claim for treble damages and penalties under the Nevada Submission of False Claims to State or Local Government Act.

234.    By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the State of Nevada false or fraudulent claims for payment or approval.

235.    By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the Nevada State Government to obtain payment from the State of Nevada for false or fraudulent claims.

236.    By reason of the Defendant Omnicare's acts, the State of Nevada has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim, together with an award of attorneys' fees, costs, disbursements and all other relief available under the Nevada Submission of False Claims to State or Local Government Act and applicable law.   In addition, as allowed by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the Nevada Submission of False Claims to State or Local Government Act and applicable law.

**COUNT XX**
**New Jersey False Claims Act**
**N.J. Stat. Ann. § 2A:32C-3(g)**

237.    Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

238.    This is a claim for treble damages and penalties under the New Jersey False Claims Act.

239.    By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the State of New Jersey false or fraudulent claims for payment or approval.

240.    By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the New Jersey State Government to obtain payment from the State of New Jersey for false or fraudulent claims.

241.     By reason of the Defendant Omnicare's acts, the State of New Jersey has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim, together with an award of attorneys' fees, costs, disbursements and all other relief available under the New Jersey False Claims Act and applicable law.  In addition, as allowed by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the New Jersey False Claims Act and applicable law.

**COUNT XXI**
**New Mexico Fraud Against Taxpayers Act and**
**New Mexico Medicaid False Claims Act**
**N.M. Stat. Ann. § 44-9-1 *et seq.* and N.M. Stat. Ann. § 27-14-3(a)(7)**

242.     Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

243.     This is a claim for treble damages and penalties under the New Mexico Medicaid False Claims Act and New Mexico Fraud Against Taxpayers Act.

244.     By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the State of New Mexico false or fraudulent claims for payment or approval.

245.     By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the New Mexico State Government to obtain payment from the State of New Mexico for false or fraudulent claims.

246.     By reason of the Defendant Omnicare's acts, the State of New Mexico has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim, together with an award of attorneys' fees, costs, disbursements and all other relief available under the New Mexico Medicaid False Claims Act and New Mexico Fraud Against

Taxpayers Act and applicable law. In addition, as allowed by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the New Mexico Medicaid False Claims Act and New Mexico Fraud Against Taxpayers Act and applicable law.

## COUNT XXII
## New York False Claims Act
## N.Y. State Fin. Law § 189(g)

247.    Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

248.    This is a claim for treble damages and penalties under the New York False Claims Act.

249.    By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the State of New York false or fraudulent claims for payment or approval.

250.    By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the New York State Government to obtain payment from the State of New York for false or fraudulent claims.

251.    By reason of the Defendant Omnicare's acts, the State of New York has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim, together with an award of attorneys' fees, costs, disbursements and all other relief available under the New York False Claims Act and applicable law. In addition, as allowed by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the New York False Claims Act and applicable law.

### COUNT XXIII
### North Carolina False Claims Act
### N.C. Gen. Stat. § 1-607(a)(7)

252.    Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

253.    This is a claim for treble damages and penalties under the North Carolina False Claims Act.

254.    By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the State of North Carolina false or fraudulent claims for payment or approval.

255.    By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the North Carolina State Government to obtain payment from the State of North Carolina for false or fraudulent claims.

256.    By reason of the Defendant Omnicare's acts, the State of North Carolina has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim, together with an award of attorneys' fees, costs, disbursements and all other relief available under the North Carolina False Claims Act and applicable law. In addition, as allowed by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the North Carolina False Claims Act and applicable law.

### COUNT XXIV
### Oklahoma Medicaid False Claims Act
### Okla. Stat. tit. 63, § 5053.1B(7)

257.    Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

258.    This is a claim for treble damages and penalties under the Oklahoma Medicaid False Claims Act.

259.    By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the State of Oklahoma false or fraudulent claims for payment or approval.

260.    By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the Oklahoma State Government to obtain payment from the State of Oklahoma for false or fraudulent claims.

261.    By reason of the Defendant Omnicare's acts, the State of Oklahoma has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim, together with an award of attorneys' fees, costs, disbursements and all other relief available under the Oklahoma Medicaid False Claims Act and applicable law.  In addition, as allowed by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the Oklahoma Medicaid False Claims Act and applicable law.

## COUNT XXV
### Rhode Island State False Claims Act
### R.I. Gen. Laws § 9-1.1-3(7)

262.    Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

263.    This is a claim for treble damages and penalties under the Rhode Island State False Claims Act.

264.     By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the State of Rhode Island false or fraudulent claims for payment or approval.

265.     By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the Rhode Island State Government to obtain payment from the State of Rhode Island for false or fraudulent claims.

266.     By reason of the Defendant Omnicare's acts, the State of Rhode Island has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim, together with an award of attorneys' fees, costs, disbursements and all other relief available under the Rhode Island State False Claims Act and applicable law.  In addition, as allowed by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the Rhode Island State False Claims Act and applicable law.

## COUNT XXVI
### Tennessee False Claims Act and Medicaid False Claims Act
### Tenn. Code Ann. §§ 4-18-103(a)(7) and 71-5-181(a)(1)(A), (B) and (D)

267.     Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

268.     This is a claim for treble damages and penalties under the Tennessee False Claims Act and Medicaid False Claims Act.

269.     By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the State of Tennessee false or fraudulent claims for payment or approval.

65

270.     By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the Tennessee State Government to obtain payment from the State of Tennessee for false or fraudulent claims.

271.     By reason of the Defendant Omnicare's acts, the State of Tennessee has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim, together with an award of attorneys' fees, costs, disbursements and all other relief available under the Tennessee False Claims Act and Medicaid False Claims Act and applicable law.   In addition, as allowed by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the Tennessee False Claims Act and Medicaid False Claims Act and applicable law.

## COUNT XXVII
### Texas Medicaid Fraud Prevention Act
### Tex. Hum. Res. Code Ann. § 36.002(12)

272.     Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

273.     This is a claim for treble damages and penalties under the Texas Medicaid Fraud Prevention Act.

274.     By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the State of Texas false or fraudulent claims for payment or approval.

275.     By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the Texas State Government to obtain payment from the State of Texas for false or fraudulent claims.

276.    By reason of the Defendant Omnicare's acts, the State of Texas has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim together with an award of attorneys' fees, costs, disbursements and all other relief available under the Texas Medicaid Fraud Prevention Act and applicable law.  In addition, as allowed by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the Texas Medicaid Fraud Prevention Act and applicable law.

### COUNT XXVIII
### Vermont False Claims Act
### Vt. Stat. Ann. tit. 32, § 630 *et seq.*

277.    Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

278.    This is a claim for treble damages and penalties under the Vermont False Claims Act.

279.    By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the State of Vermont false or fraudulent claims for payment or approval.

280.    By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the Vermont State Government to obtain payment from the State of Vermont for false or fraudulent claims.

281.    By reason of the Defendant Omnicare's acts, the State of Vermont has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim together with an award of attorneys' fees, costs, disbursements and all other relief available under the Vermont False Claims Act and applicable law.  In addition, as allowed by statute, the

Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the Vermont False Claims Act and applicable law.

### COUNT XXIX
### Virginia Fraud Against Taxpayers Act
### Va. Code Ann. § 8.01-216.3(a)(7)

282.   Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

283.   This is a claim for treble damages and penalties under the Virginia Fraud Against Taxpayers Act.

284.   By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the Commonwealth of Virginia false or fraudulent claims for payment or approval.

285.   By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the Virginia Government to obtain payment from the Commonwealth of Virginia for false or fraudulent claims.

286.   By reason of the Defendant Omnicare's acts, the Commonwealth of Virginia has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim, together with an award of attorneys' fees, costs, disbursements and all other relief available under the Virginia Fraud Against Taxpayers Act and applicable law.  In addition, as allowed by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the Virginia Fraud Against Taxpayer Act and applicable law.

## COUNT XXX
## Washington Medicaid Fraud False Claims Act
## Wash. Rev. Code § 74.09.201 *et seq.*

287.     Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

288.     This is a claim for treble damages and penalties under the Washington Medicaid Fraud False Claims Act.

289.     By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the State of Washington false or fraudulent claims for payment or approval.

290.     By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the Washington State Government to obtain payment from the State of Washington for false or fraudulent claims.

291.     By reason of the Defendant Omnicare's acts, the State of Washington has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim together with an award of attorneys' fees, costs, disbursements and all other relief available under the Washington Medicaid Fraud False Claims Act and applicable law.  In addition, as allowed by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the Washington Medicaid Fraud False Claims Act and applicable law.

## COUNT XXXI
## Wisconsin False Claims for Medical Assistance Act
## Wis. Stat. § 20.931(2)(g)

292.     Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

293. This is a claim for treble damages and penalties under the Wisconsin False Claims for Medical Assistance Act.

294. By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the State of Wisconsin false or fraudulent claims for payment or approval.

295. By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the Wisconsin State Government to obtain payment from the State of Wisconsin for false or fraudulent claims.

296. By reason of the Defendant Omnicare's acts, the State of Wisconsin has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim together with an award of attorneys' fees, costs, disbursements and all other relief available under the Wisconsin False Claims for Medical Assistance Act and applicable law. In addition, as allowed by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the Wisconsin False Claims for Medical Assistance Act and applicable law.

## COUNT XXXII
### District of Columbia False Claims Act
#### D.C. Code § 2-381.01 *et seq.*

297. Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

298. This is a claim for treble damages and penalties under the District of Columbia False Claims Act.

299.   By virtue of the acts described above, Defendant Omnicare knowingly submitted to officers, employees, or agents of the District of Columbia false or fraudulent claims for payment or approval.

300.   By virtue of the acts described above, Defendant Omnicare knowingly made, used, or caused to be made or used, false records or statements to the Government of the District of Columbia to obtain payment from the District of Columbia for false or fraudulent claims.

301.   By reason of the Defendant Omnicare's acts, the District of Columbia has suffered actual damages and is entitled to recover treble damages and a civil penalty for each false claim together with an award of attorneys' fees, costs, disbursements and all other relief available under the District of Columbia False Claims Act and applicable law.  In addition, as allowed by statute, the Relator is entitled to a portion of any recovery obtained in this matter, together with his attorneys' fees, costs, disbursements and all other relief available under the District of Columbia False Claims Act and applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Relator, on behalf of the United State and the Plaintiff States, demands that judgment be entered in Plaintiffs' favor and against Defendant for the maximum amount of damages and such other relief as the Court may deem appropriate on each Count. This includes, with respect to the Federal False Claims Act, three times the amount of damages to the Federal Government plus civil penalties of no more than Eleven Thousand Dollars ($11,000.00) and no less than Five Thousand Five Hundred Dollars ($5,500.00) for each false claim, and any other recoveries or relief provided for under the Federal False Claims Act.

This Request also includes, with respect to the state statutes cited above, the maximum damages permitted by those statutes and the maximum fine or penalty permitted by those statutes, and any other recoveries or relief provided for under the State FCAs.

Further, Relator requests that he receive the maximum amount permitted by law of the proceeds of this action or settlement of this action collected by the United States and the Plaintiff States, plus reasonable expenses necessarily incurred, and reasonable attorneys' fees and costs. Relator requests that his award be based upon the total value recovered, both tangible and intangible, including any amounts received from individuals or entities not parties to this action.

Dated this 1st day of June, 2015.

O'NEIL, CANNON, HOLLMAN, DEJONG & LAING S.C.

By: _____

Douglas P. Dehler (to be admitted *pro hac vice*)
111 East Wisconsin Avenue, Suite 1400
Milwaukee, Wisconsin 53202-4870
(414) 276-5000


MAHANY & ERL
Brian Mahany
1437 N. Prospect Avenue, Suite 200
Milwaukee, WI 53202
(414) 223-0464

Attorneys for Plaintiffs