LAW OFFICES

WILLIAMS & CONNOLLY LLP

PERRY F. AUSTIN
(202) 434-5489
paustin@wc.com

680 MAINE AVENUE SW
WASHINGTON, DC 20024

(202) 434-5000
WWW.WC.COM

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

November 11, 2022

**SO ORDERED**

*[signature]*

VALERIE FIGUEREDO
United States Magistrate Judge
Dated: 11-14-2022

The letters submitted at ECF Nos. 157 and 158 will be addressed at the conference scheduled for Wednesday, November 16, 2022 at 10:00 a.m. Any other issues the parties would like to address at the conference should be raised in a letter submitted no later than end of day today, November 14, 2022.

**Via ECF**

Hon. Valerie Figueredo
United States District Court
  for the Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States ex rel. Bassan et al. v. Omnicare, Inc. and CVS Health Corp.*,
           15 Civ. 4179 (CM)

Dear Judge Figueredo:

      I write on behalf of Defendants pursuant to § II.c.2 of the Court's Individual Practices concerning the government's refusal to produce documents concerning long-term-care pharmacy audits conducted by the Defense Health Agency ("DHA"). During the October 14, 2022 hearing, the government told the Court that it could not respond to certain of Defendants' interrogatories because it does not know what actually happens during audits, having never reviewed the audits. Dkt. 146 (Oct. 14, 2022 Hr'g Tr.) at 77:25–78:3, 91:11–19. To justify that position, the government claimed that Defendants are equally able to determine the answers to those interrogatories because the government would produce "all of the information" needed for Defendants to do so, *id.* at 73:6, a premise the Court accepted. Now, however, the government has abandoned its pledge to provide "all" information. Claiming that providing "all of the information" would be too burdensome, the government has proposed producing just **3%** of a subset of the DHA audit files during the relevant time period. The Court should hold the government to its promise and order it to produce "all of the information" needed to conduct the analysis of DHA audits the government refuses to do itself.

      As background, the government brought this case premised on the (inaccurate) idea that Omnicare, Inc. ("Omnicare") dispensed prescription medications to residents of long-term-care facilities based on documentation that was improper, and that federal healthcare agencies would have refused to pay for prescriptions based on such documentation. Dkt. 17, Gov't Compl. ¶¶ 249–57. In reality, the federal healthcare agencies routinely accept and encourage pharmacies to rely on the precise documentation the government claims those agencies would have rejected. For that reason, Defendants have focused discovery on what DHA (or its agents) actually do in audits.

WILLIAMS & CONNOLLY LLP

November 11, 2022
Page 2

On May 24, 2021, Defendants served RFPs asking the government to produce documents concerning DHA audits (1) of Omnicare, (2) involving the use of Medication Orders, or (3) analyzing the validity of the documentation that a long-term-care pharmacy relied on to dispense a medication. Ex. 1 (Defendants' Second Set of RFPs) at 13. After more than one year of delay, the government proposed on September 2, 2022 that it would produce just a narrow subset of DHA audit files. It crafted this proposal to ensure that Defendants would not receive a single audit that could undermine the government's inaccurate allegations. The government agreed to produce only audits that had one of a handful of final "discrepancy codes," meaning that there was a finding that something in a pharmacy's claim was deficient. But the government knew that audits that accepted the documentation or explanation provided would never have such a code.

After Defendants raised this with the Court, Dkt. No. 126, the government stated that it would also produce a small sample of audits that did not include any discrepancy code. During the October 13, 2022 conference, the Court ordered the government to tell Defendants how many total audit files DHA has that were (1) long-term-care-pharmacy audits and (2) had no final discrepancy code. Dkt. 144 (Oct. 13, 2022 Hr'g Tr.) at 62:14–17. The government has since indicated that there are 6,200 such audits and has proposed producing just 20 such audits per year for a total of 180 (3% of the 6,200 audits). The government also admits that it has no idea whether that 3% sample will include audits that have anything to do with the documentation issues that relate to this case. *Id.* at 53:24–54:5. The government has therefore ensured that audits that support its allegations, if any exist, are produced, but audits that undermine its allegations are highly unlikely to be produced. That gerrymandered approach to document production is improper.

DHA's long-term-care pharmacy audits are highly relevant to the case. If DHA accepted long-term-care-pharmacy claims under the circumstances the government sues about, the government cannot prevail. *See Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 195 (2016) ("If the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material."). The government therefore placed these DHA audits at issue by premising its complaint on inaccurate allegations about the kind of documentation that DHA would reject in deciding whether to pay long-term-care-pharmacy claims. Gov't Compl. ¶¶ 249–57. Having done so, the government cannot shield those very practices from meaningful discovery. *See* Fed. R. Civ. P. 26(b)(1); *see also, e.g., Doherty v. Bice*, 2021 WL 5630816, at *5 (S.D.N.Y. Dec. 1, 2021) (ordering party to produce documents related to matters "specifically put at issue through [the] complaint").

Shielding those practices from document discovery is particularly inappropriate because, just weeks ago, the government evaded answering interrogatories about such practices by claiming that it *would* produce the documents Defendants need about those audits. When Defendants asked the Court to order the government to provide responses to interrogatories concerning what actually takes place during such audits, the government invoked Rule 33(d), which applies only if "the burden of deriving or ascertaining the answer will be substantially the same for either party." Fed. R. Civ. P. 33(d). The government told the Court that Defendants "have all of the information that they need to figure this out for themselves" and that the government was "not required to do

**WILLIAMS & CONNOLLY**LLP

November 11, 2022
Page 3

analysis of that and tell them our findings." Dkt. 146 (Oct. 14, 2022 Hr'g Tr.) at 72:24–73:3; *see also id.* 73:24–74:4 ("We've produced the business records.  So they can look at those themselves.").  The Court agreed with the government, ruling that the government had "given [Defendants] the documents that would allow you to figure out" the information responsive to Defendants' interrogatories concerning what actually happens in audits.  *Id.* 77:2–4; *see also id.* 78:5–9.

Producing just 3% of the DHA audits that might undermine the government's allegations does not come close to giving Defendants "all of the information that they need," *id.* 72:24–25, to learn the answers to the interrogatories.  The government cannot have it both ways.  If the government can avoid providing meaningful interrogatory responses by invoking Rule 33(d) and claiming to have produced "***all*** of the information that [Defendants] need to figure this out for themselves," *id.* at 72:24–73:2 (emphasis added), then it must actually produce all of that information.  Indeed, the whole point of Rule 33(d) is that it is an "Option to ***Produce*** Business Records." Fed. R. Civ. P. 33(d); *see also In re Weatherford Int'l Sec. Litig.*, 2013 WL 5788680, at *3 (S.D.N.Y. Oct. 28, 2013) (to invoke Rule 33(d) because documents from which the responsive information may be gleaned "have already been produced in the discovery process," party must "identify[] the responsive documents" "in sufficient detail to enable [the receiving party] to locate and identify the records as readily as could the [producing party]").

Finally, the government's vague claims of burden cannot justify shielding DHA's auditing practices from meaningful scrutiny.  During the October 13, 2022 hearing, the government claimed that it would be burdensome to produce the audits because they might "need[] to be reviewed for privilege." Dkt. 144 (Oct. 13, 2022 Hr'g Tr.) at 55:3–12.  The government has never explained how audit files which, by definition, reflect communications with third parties (the pharmacies themselves), could possibly be privileged.  Now it has apparently abandoned that privilege claim in favor of a vague assertion that Express Scripts (the government's agent for these audits) must spend 15 minutes reviewing each audit file before it can be produced (why, the government does not say) and that this review cannot be done by anyone other than an employee of Express Scripts (why, the government does not say).  By bringing a case that is premised on (inaccurate) claims about what actually happens during DHA audits, the government signed itself up to make meaningful productions about that topic.  The mere fact that it may need to use an outside document-review vendor to do so is no basis to refuse to produce highly relevant documents.

Accordingly, Defendants respectfully request that the Court order the government to produce all 6,200 DHA audits.  Thank you for your attention to this matter.

Sincerely,

Perry F. Austin