LAW OFFICES

# WILLIAMS & CONNOLLY LLP

DAVID RANDALL J. RISKIN
(202) 434-5789
driskin@wc.com

680 MAINE AVENUE SW
WASHINGTON, DC 20024

(202) 434-5000
WWW.WC.COM

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

April 18, 2024

**MEMO ENDORSED**

HON. VALERIE FIGUEREDO
UNITED STATES MAGISTRATE JUDGE
DATED: April 22, 2024

This Motion, ECF No. 458, will be added to the scope of the conference scheduled for May 1, 2024. Motions at ECF Nos. 429, 449, and 458 will now be discussed at the scheduled conference.

*Via ECF*
The Honorable Valerie Figueredo
United States Magistrate Judge
  for the Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *United States ex rel. Bassan v. Omnicare, Inc.*, No. 15-cv-04179 (CM) (VF)

Dear Judge Figueredo:

The U.S. Attorney's Office has withheld on deliberative-process grounds approximately 200 documents reflecting internal discussions about one or more *rejected* "RAC" audits, which apparently would have penalized long-term-care pharmacies for engaging in practices the Office calls fraud here. In a recent deposition, however, the Office permitted CMS' representative to testify about those discussions. Based on this litigation choice, fairness and need dictate that the Office now must produce the withheld documents. So too is Omnicare entitled to a short deposition of the representative given her inaccurate and incomplete description of the basis for her RAC audit testimony.

Last year, the Court rejected thousands of deliberative-process assertions that showed CMS knowingly accepted each of the long-term-care practices the Office challenges. The Court, however, permitted the Office to continue to withhold documents relating to one or more proposed-but-rejected RAC audits. (Omnicare appealed that latter order, which appeal remains pending.) The Court did so based on the Office's argument that because CMS rejected the RAC audit "[d]eliberations regarding whether to pursue" it cannot be relevant to CMS' "actual knowledge" of the challenged long-term-care practices. (ECF 369 at 4.) The Office questioned "what it would gain defendants or the Court or a jury to learn about what the methodology might have been for a proposal that was made that was never enacted" (ECF 373 at 17:1–4), and argued that the internal discussions about both the methodology and CMS' rejection of the RAC audit were protected by deliberative process (ECF 369 at 3; ECF 412 at 1–2.)

During the recent deposition, the Office changed its tune—prejudicing Omnicare. Ilina Chaudhuri, a lawyer and CMS' Federal Rule 30(b)(6) representative, provided substantial testimony about the methodology for a proposed-but-rejected RAC audit and the reasons CMS tossed it aside. According to her, the proposed audit would have ████████████████████

WILLIAMS & CONNOLLY LLP

April 18, 2024
Page 2



and ▮▮▮▮▮▮▮▮▮▮" (Ex. 1 (Tr. of I. Chaudhuri Rule 30(b)(6) Dep. (Mar. 12, 2024)), 18:15–25; *see also* Ex. 1 at 18:4–19:20.) Chaudhuri also explained that, in connection with the audit, ▮▮▮▮▮▮▮▮▮▮" (Ex. 1 at 19:12–13.) She then noted that CMS rejected the audit because "▮▮▮▮▮▮▮▮▮▮." (Ex. 1 at 19:9–10.) Chaudhuri testified about the very things the Office had argued were not discoverable and which, based on those arguments, the Court permitted the Office to continue withholding.

Chaudhuri's testimony was deliberate; Chaudhuri was affirmatively prepared to provide it, although she inaccurately testified about that preparation. She said that ▮▮▮▮▮▮▮▮▮▮ (Ex. 1 at 30:16–31:6.) Nearly a month after Chaudhuri's deposition, the Office represented this was not true and the information to which Chaudhuri had testified was supplied entirely by unidentified government counsel. Ex. 2 (Email from L. Issacharoff to B. Hazelwood (Apr. 4, 2024 at 4:33 p.m.).) Given the late disclosure, Omnicare was unable to question Chaudhuri about the specifics of this counsel-provided information.

The government's sword-and-shield approach to deliberative process is unfair and requires production of the withheld RAC-audit-related documents. The alternative is that Omnicare must accept Chaudhuri's counsel-generated testimony, without any opportunity to assess whether the evidence supports it. Nor should the Court permit Chaudhuri's inaccurate testimony about her preparation to go unexamined; Omnicare should have the opportunity to depose Chaudhuri about that preparation.

**Omnicare Is Entitled to the RAC-Audit-Related Documents.** As the Court will recall, PDE audits are the only audits CMS conducts of Medicare Part D long-term-care prescription claims. (ECF 373 at 6:11–20.) And in those audits, CMS was aware of and approved the practices the Office challenges here, including that long-term-care pharmacies often do not possess prescription documentation at the time the audits are conducted. (ECF 391 at 2–3.) The Office, unsurprisingly, has sought to downplay the significance of the PDE audits; evidence that other divisions in CMS had the opportunity to audit long-term-prescription claims but did not, then, is relevant to Omnicare's defense. That is where the RAC audits come in—they provided an opportunity for CMS to look into the same issues the PDE audits considered. CMS' decision to adopt a RAC audit (or, better, not adopt one) and the details of proposed audits thus illustrates how CMS treated the activities about which the Office now sues.

The Court ruled that the Office's assertion of deliberative process must yield where Omnicare had a "compelling need" for documents related to the government's consideration of long-term-care pharmacy audit matters. (ECF 370 at 1–2; *accord* ECF 336 at 28:3–7, 30:13–31:4, 36:7–37:3.) *See generally United States ex rel. Spay v. CVS Caremark Corp.*, 875 F.3d 746, 764 (3d Cir. 2017). Although it found Omnicare had a compelling need for thousands of deliberative-process documents (ECF 370 at 1), the Court permitted the Office to withhold a set of RAC

WILLIAMS & CONNOLLY LLP

April 18, 2024
Page 3

audit-related documents because it reasoned that Omnicare had obtained information in those documents from PDE audit documents (ECF 370 at 2). Chaudhuri's testimony should alter the Court's analysis, and require production of the RAC-related documents, for multiple reasons:

*First*, Omnicare has a need for the documents because the government chose to let Chaudhuri testify about deliberations concerning the RAC audit's methodology and CMS' rejection of the audit. Absent relief, Omnicare is unable meaningfully to challenge Chaudhuri's assertions on a subject the Office now affirmatively has injected into the case (after having persuaded the Court it is not discoverable). Courts prohibit this "inequitable" sword-and-shield approach, including to deliberative process. *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 898 F. Supp. 2d 603, 610 (S.D.N.Y. 2012) (deliberative process waived where party "placed its own decision-making process 'at issue'" because "[w]ere this not so, [a party] could protect from discovery any deliberative process materials" that harm its case and "could present to a jury any internal communications" on the subject that support its case); *Allstate Ins. Co. v. Serio*, 2000 WL 554221, at *11 (S.D.N.Y. May 5, 2000) (rejecting government attempt to "rel[y] on materials for which it sought a [deliberative-process] privilege"; "such a privilege cannot be used as both a shield and a sword").

Continuing to permit the Office to withhold the RAC-related documents in the face of Chaudhuri's testimony would be particularly inequitable because that testimony seemingly contradicts the withheld documents. Chaudhuri said the RAC audit had "███████████████████████████████████████████████████" (Ex. 1 at 19:12–13) But based on the Court's description of one of the withheld documents, the opposite may be the case. That document, according to the Court, discussed "real-time practices" of long-term-care pharmacies using "99 refills" as compared to "an otherwise valid order that would comply with state law" in the context of a proposed RAC audit. (ECF 373 at 18:8–10.) Any RAC audit that would have considered the effect of these "real-time practices" compared to "an otherwise valid order" would seem to require review of "supporting documentation." At the least, the potential inconsistency is an issue Omnicare should be able to explore by comparing the documents to Chaudhuri's testimony. *Cf. Peck v. United States*, 514 F. Supp. 210, 212–13 (S.D.N.Y. 1981) (where government's use of supposedly deliberative information "creates even 'an unintended false impression' of the underlying material," deliberative process must yield).

*Second*, Chaudhuri's testimony undermines the Office's assertion that the government needs to keep discussions regarding RAC audits secret. Deliberative process gives way where the need for the withheld information outweighs the government's interest in maintaining its secrecy. *See, e.g.*, *Greater N.Y. Taxi Ass'n v. City of N.Y.*, 2017 WL 4012051, at *9–10 (S.D.N.Y. Sept. 11, 2017). And this calculus overwhelmingly favors production where the government intentionally discloses aspects of the supposedly secret information. *See New York v. Wolf*, 2020 WL 3073294, at *5 (S.D.N.Y. June 10, 2020) ("selective disclosure" of statements concerning deliberations "has shifted the balance of competing interests in favor of disclosure of the related statements"). The Office's choice to allow Chaudhuri to testify undermines any secrecy interest.

The Office cannot have it all ways. Having argued that withholding deliberations about

WILLIAMS & CONNOLLY LLP

April 18, 2024
Page 4

RAC audits (and thus documents relating to them) was appropriate (and winning the issue), but then having permitted Chaudhuri to testify about those deliberations, the Office has ceded any justification for the documents' continued withholding. *See, e.g., EEOC v. Midwest Div. – RMC, LLC*, 2006 WL 6384881, at *3 (W.D. Mo. May 31, 2006) (deliberative process privilege waived where party "allow[ed witness] to answer some questions" on the topic); *Kirschner v. Klemons*, 2005 WL 1214330, at *4 (S.D.N.Y. May 19, 2005) (deliberative process waived as to issues government personnel had testified about in a deposition).

**The Court Should Reopen Ms. Chaudhuri's Deposition To Allow For Questioning About the Witness' Preparation.** A party is entitled to the basis of a corporate representative's testimony. *See Starr Indem. & Liab. Co. v. Water Quality Ins. Syndicate*, 320 F. Supp. 3d 549, 563 (S.D.N.Y. 2018) ("Ordinarily, counsel may inquire of the Rule 30(b)(6) corporate witness what the basis was of particular testimony, which affords counsel—and the trier of fact—a basis for gauging the reliability of that testimony (and may enable counsel to follow up with witnesses with personal knowledge)."), *aff'd*, 775 F. App'x 4 (2d Cir. 2019). Here, Chaudhuri testified that her knowledge of the RAC audit came from an email she reviewed. (Ex. 1 at 31:3–6 ( ).) As Omnicare was not aware of any produced email reflecting the representations Chaudhuri made, its counsel requested that the Office produce it. (Ex. 2 (Email from D. Boger to L. Issacharoff (Mar. 14, 2024 at 9:35 p.m.).) Weeks went by before Omnicare received a substantive answer. The Office's after-the-fact position: Chaudhuri was wrong and an email was not the basis for her testimony, unidentified information provided by unidentified counsel was. (Ex. 2 (Email from L. Issacharoff to B. Hazelwood (Apr. 4, 2024 at 4:33 p.m.).)

Because Chaudhuri testified inaccurately and incompletely about her preparation for her RAC-related testimony, Omnicare had no meaningful opportunity to examine her about that preparation. It could not ask, for example, who provided her the underlying information; when she learned it; whether she did anything to assess the accuracy of counsel's representations; how many times she spoke with counsel; what, specifically, counsel told her; and the host of other questions answers to these inquiries would yield. Simply, Omnicare was deprived of a reasonable opportunity to "gaug[e] the reliability of that testimony" by understanding whence it came. *Starr Indem.*, 320 F. Supp. 3d at 563; *see also, e.g., State Farm Mut. Auto. Ins. v. New Horizont, Inc.*, 250 F.R.D. 203, 215–16 & n.9 (E.D. Pa. 2008) (rejecting argument that party could "instruct[]" Rule 30(b)(6) witness "not to disclose any facts learned from discussions with counsel in preparation for the … deposition"); *cf. Thomas v. Euro RSCG Life*, 264 F.R.D. 120, 122 (S.D.N.Y. 2010) (requiring production of notes used as basis for refreshing witness memory because "it is in the interests of justice for defendants to be able to adequately cross-examine plaintiff by having access to notes that plaintiff admitted reviewing so that she could answer questions 'accurately'"). And heightening Omnicare's need for the opportunity to ask Chaudhuri about her preparation is that, apparently, Chaudhuri's RAC-related testimony was based on counsel-generated facts. *See In re Neurontin Antitrust Litig.*, 2011 WL 253434, at *10 (D.N.J. Jan. 25, 2011) ("The Rule 30(b)(6) witness, however, cannot simply be a conduit for counsel's contentions.").

\* \* \* \* \*

WILLIAMS & CONNOLLY LLP

April 18, 2024
Page 5

      The Court should order the Office to produce the withheld RAC audit-related documents and permit Omnicare to take a short remote deposition of Chaudhuri to meaningfully address her preparation for her RAC audit-related testimony.

                                               Respectfully submitted,

                                               /s/ *David Randall J. Riskin*

                                               David Randall J. Riskin