```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/19/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
──────────────────────────────────── X

UNITED STATES OF AMERICA, *et al.*, *ex rel.* URI BASSAN

    Plaintiffs,

    v.

OMNICARE, INC.,

    Defendant.

──────────────────────────────────── X     15 Civ. 4179

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

OMNICARE, INC. and CVS HEALTH CORP.,

    Defendants.

──────────────────────────────────── X

**DECISION AND ORDER DENYING CVS HEALTH CORPORATION'S
MOTION FOR SUMMARY JUDGMENT**

McMahon, J.:

This motion arises in the *qui tam* False Claims Act ("FCA") action originally brought in June 2015 by relator Uri Bassan on behalf of the federal government, 29 states, and the District of Columbia against Defendant Omnicare, Inc., a long-term pharmacy. In 2019, the United States (the "Government") intervened in the action, filing a complaint against Defendants Omnicare and CVS Health Corp. ("CVS Health"), whose wholly owned subsidiary, CVS Pharmacy, Inc. ("CVS Pharmacy"), had completed its purchase of Omnicare in August 2015.

1

The Government alleges that between 2010 and 2018, Omnicare consistently dispensed prescription drugs to individuals living at long-term residential facilities that were not supported by valid prescriptions. Although the drugs were dispensed without a valid prescription, Omnicare still submitted claims for reimbursement to several federal healthcare programs. These submissions for reimbursement are alleged to have contained false information in violation of the FCA.

Defendant CVS Health now moves for summary judgment, pursuant to Fed. Civ. P. R. 56(a), on the grounds that it did not directly participate in the alleged false claims. For the reasons stated below, the motion is DENIED.

## BACKGROUND

CVS Health wholly owns CVS Pharmacy which acquired Omnicare on August 18, 2015. Dkt. No. 587-1, ¶ 7. Prior to August 2015, Omnicare had no relation to CVS Health or any other entity in the CVS family of companies. *Id.* ¶ 6.

In 2020, CVS Health moved to dismiss all counts asserted against it by the Government, arguing that the Government failed to allege that CVS Health directly participated in the allegedly unlawful scheme perpetrated by Omnicare. *U.S. v. Omnicare, Inc.*, No. 1:15-CV- 4179 (CM), 2021 WL 1063784, at *13 (S.D.N.Y. Mar. 19, 2021). I denied the motion, holding that the Government sufficiently alleged that CVS Health directly participated in the scheme by allegedly "assum[ing] an active role in overseeing Omnicare's operations, including pharmacy dispensing practices and systems" after the acquisition of Omnicare in 2015. *Id.* (citing Dkt. No. 17, ¶ 21).

Now that discovery has concluded, CVS Health argues that "the evidence shows that *Omnicare* continued to manage its own dispensing and claim-submission functions even after

2

being acquired by a CVS Health subsidiary." Dkt. No. 587, at 1. On these grounds, CVS Health moves for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)); *see also Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

On a motion for summary judgment, the initial burden rests with the moving party to make a prima facie showing that no issues of material fact exist for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330-31 (1986). Once this showing is made, "[t]o defeat summary judgment, the non-movant must produce specific facts" to rebut the movant's showing and to establish that there are material issues of fact requiring trial. *Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998) (citing *Celotex*, 477 U.S. at 322). In determining whether a genuine issue of material fact exists, a court must view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. *See Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010).

## DISCUSSION

CVS Health argues, *first*, that the Government improperly seeks to hold it liable for the actions of its subsidiary, CVS Pharmacy, and, *second*, that there is no evidence of direct participation by CVS Health engaging in the submission of false claims.

I address these arguments in turn.

### A. The Government Cannot Hold CVS Health Liable for the Actions of CVS Pharmacy

The Government has the burden to show exactly what corporations were involved in the medication-dispensing process at Omnicare. It is supposed to conduct a comprehensive search of the history of the target defendant prior to litigation—in addition to discovery at the start of litigation—to make sure that it has identified the *correct* corporation.

I assume that attorneys working for the United States Department of Justice are aware of the hornbook doctrine that separately incorporated corporations are presumed to be separate entities, and that each corporation under the umbrella of a common holding company is a separate entity from the holding company and from its fellow subsidiaries—unless there is evidence that would allow the trier of fact to "pierce the corporate veil" because the corporate formalities that allow one to conclude that commonly owned corporations are separate from their common parent and from each other were ignored. *See, e.g.*, Horton, Liability of Corporation for Torts of Subsidiary, 7 A. L. R. 3d 1343, 1349 (1966). Here, the Government has chosen to forego veil-piercing or alter-ego theories. *See* Dkt. No. 81, at 34-37.

I will not listen to the Government complain that, at the eleventh hour, it relied on CVS Health, Omnicare's ultimate parent and the corporation it sued, to distinguish itself from its subsidiaries. The Government should have known that CVS Health was not its subsidiary and that CVS Health would stand on corporate formalities. *See, e.g., Church Ekklasia Sozo Inc. v. CVS*

4

*Health Corp.*, No. 3:20-CV-00382-RJC-DSC, 2022 WL 1572732, at \*\*3-4 (W.D.N.C. Feb. 25, 2022) (detailing evidence that CVS Health is a holding company without operations and dismissing the complaint against CVS Health for the alleged misconduct of CVS Pharmacy); *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 979–80 (N.D. Cal. 2016) (same); *Tashjian v. CVS Pharm., Inc.*, 2020 WL 1931859, at \*3 (D. Mass. Mar. 13, 2020) (same).

To the extent that the Government suggests that CVS Health provided misleading interrogatory answers, *see* Dkt. No. 635, at 13, the appropriate response would have been to move for sanctions—not to ask the Court to hold a parent liable for defalcations of its subsidiary when there is no reason to pierce the corporate veil. *See* Fed. R. Civ. P. 37(c)(1). In response to interrogatories, CVS Health (the corporation the Government chose to sue) defined Defendant "CVS" as referring "only to employees or entities within the CVS Health corporation organization that had responsibility for or interaction with Omnicare regarding the prescription-dispensing matters []." Dkt No. 626-1, at 5. It was incumbent on the Government to ask any follow-up questions that might have been necessary to clarify whether CVS Health or some other entity "within the CVS Health corporation organization" was the responsible party—and so to ascertain whether it had sued the correct party.

It is too late for the Government to correct that oversight now—ten years into this lawsuit and on the eve of trial. The time for adding new parties expired long ago. Unless the Government can prove that CVS Health—the ultimate parent, the holding company—"participated" in the dispensation of medication, it cannot hold CVS Health liable under the False Claims Act.

### B. There is a Genuine Dispute of Material Fact as to Whether CVS Health Directly Participated in the Alleged False Claims

The question before the Court is whether there is any genuine issue of fact as to whether CVS Health *participated* in Omnicare's alleged filing of false claims after CVS Pharmacy's acquisition of Omnicare in 2015.

The FCA provides, in relevant part:

(1) ... [A]ny person who –

a) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

b) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

c) conspires to defraud the government by getting a false or fraudulent claim allowed or paid; [or]

...

g) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government, is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person....

31 U.S.C. § 3729(a).

The FCA's provisions on liability for those who cause false claims to be presented make clear that "mere awareness that another may, or even has, chosen to make such a claim does not alone constitute 'causing a false claim to be presented.'" *U.S. ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 245 (3d Cir. 2004) (citing *United States ex rel. Shaver v. Lucas Western Corp.*, 237 F.3d 932 (8th Cir. 2001)). Rather, the provisions "indicate a purpose to reach any person who *knowingly assisted in causing* the government to pay claims which were grounded in fraud, without regard to whether that person had direct contractual relations with the government." *United States ex rel.*

6

*Marcus v. Hess*, 317 U.S. 537, 544 (1943) (emphasis added). "Thus, the appropriate inquiry under § 3729(a)(1) is whether that specific conduct *causes* the presentment of a false claim." *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 714 (10th Cir. 2006). "To 'cause' [a] false claim to be submitted, it must be the natural, ordinary and reasonable consequence of one's conduct." *United States ex rel. Kolchinsky v. Moody's Corp.*, 162 F. Supp. 3d 186, 195 (S.D.N.Y. 2016) (cleaned up).

In *United States v. Spectrum Painting Corp.,* 19 Civ. 2096 (AT), 2020 WL 5026815, at *10 (S.D.N.Y. Aug. 25, 2020), the court held that "specific steps" by one defendant corporation "to circumvent …regulations [designed to increase the participation of disadvantaged business enterprises] and hide the extent of [another defendant corporation's] involvement, including by making misrepresentations in required forms" satisfied the causation element for both defendants. Employees of both corporations "were intimately involved in the…cover[] up." *Id.* By contrast, in *U.S. ex rel. Henig v. Amazon.com, Inc.*, No. 19-CV-05673 (ER), 2025 WL 27736, at *9 (S.D.N.Y. Jan. 3, 2025), the court held that defendant Amazon could not be held liable unless it took "specific steps to circumvent customs duties and hide the false claims made by [the non-party foreign manufacturers]." (quotation marks omitted). In *Hening,* there was no allegation that Amazon "caused the [n]on-parties to present false record to the government to lower customs duties over the [products]" and, for that reason, causation was insufficiently alleged. *Id.* at *10.

In support of its burden, CVS Health begins by offering the declaration of Thomas Moffatt, Vice President, Corporate Secretary and Senior Legal Counsel of CVS Pharmacy. *See* Dkt. No. 587-2. Moffatt testified that CVS Health is a holding company and nothing more. *Id.* ¶4. In addition, CVS Health points to the sworn testimony from the deposition of Paul Brodnicki, one of Defendants' 30(b)(6) witnesses, who said (Dkt. No. 587-3):

- With respect to Omnicare's policies and procedures for medication dispensing, CVS Health … "would not have been involved in the detailed drafting." [(Dep. of P. Brodnicki (Apr. 28, 2023), at 17:14–18:7).]

- So too for the design or substantive guidance for the content of Omnicare's pharmacy-level training. [(Dep. of P. Brodnicki (Apr. 28, 2023), at 17:14–18:7; 39:1–23; 79:6–80:6; 85:19–86:13; 88:3–16; 115:17–116:15; 122:15–24).]

- …CVS Health [did not] impose[] productivity quotas or expectations on Omnicare pharmacies or employees. [(Dep. of P. Brodnicki (Apr. 28, 2023), at 140:3–19; 142:25–143:7; 143:21–144:6).]

- CVS Health… [was not] involved in the submission of claims for payment by Omnicare, nor even had any "detailed knowledge about how" Omnicare's claims-submission process "worked." [(Dep. of P. Brodnicki (Apr. 28, 2023), at 126:10–19; 131:11–22).]

Dkt. No. 587, at 3.

Finally, CVS Health avers that the only "actions *any CVS-branched company* [which would include CVS Health and its subsidiaries] took with respect to Omnicare…arose from 'Shared Services' that are performed by employees of CVS Pharmacy [not CVS Health]…and were limited to identifying with Omnicare potential risks of 'potential review and resolution.'" Dkt. No. 587, at 3 (quoting Dkt. No. 587-3, at 39:24–42:5).

The burden thus shifted to the Government to point to the existence of evidence raising a genuine issue of fact on these points in order to defeat the motion for summary judgment. In support of its burden, the Government offers principally the following:

- CVS Health entered into the Corporate Integrity Agreement ("CIA") with the U.S. Department of Health and Human Services, agreeing to "create systems and procedures reasonably designed to ensure the accurate dispensing, and billing of the drug name and manufacturer to the Federal health care programs of prescription drugs dispensed or used in connection with [Omnicare's] Operations." Dkt. 81-1, at 17-18; *see also* Dkt. No. 94, ¶ 120. The CIA required CVS Health to appoint a Compliance Officer for Omnicare operations who would be an "employee[] and member[] of senior management of CVS Health." Dkt. No. 81-1, at 4-5.

- CVS Health compliance supervisors were at the top of the "chain of command" with regard to Omnicare's compliance matters. Dkt. No. 636-37.

8

- It was common practice for CVS Health to review and often "rewrite" the pharmacy policies of "subsidiaries," although this one line from an email contains no mention that it ever did so with respect to any policy of Omnicare. Dkt. No. 467-26.

- CVS Health was aware that, after an update to its facility codes for assisted living facilities, "[a] business decision was made to revert back to the original set up [permitting rollover dispensing at affected facilities] until a complete review could be performed." Dkt. No. 636-15. *See also* Dkt. No. 636-16.

*See* Dkt. 635, at 2-5.

The Government has satisfied its burden—but barely. Most of the evidence cited by the Government concerns CVS Health's *awareness* of Omnicare's compliance policies—not "specific steps" undertaken to facilitate the alleged submission of false claims. As noted above, mere awareness is not enough. However, the Government has provided evidence, in the form of the CIA, that CVS Health undertook that the Compliance Officer for Omnicare—who may have overseen revisions to and enforcement of internal policy and procedure concerning dispensation—would be "*an employee[]...of CVS Health*." Dkt. No. 81-1, at 4-5 (emphasis added). No one has provided me with the name or corporate affiliation of the Omnicare Compliance Officer under the CIA. As a result, I cannot conclude that this person was not an employee of CVS Health, the corporation that was sued. But unless this person was an employee of CVS Health—not a subsidiary of CVS Health—it is not clear that there would be any basis rooted in the CIA to hold the parent holding company liable for submitting false claims. That the Government might be able to sue CVS Health for breaching the CIA if, for example, an employee of CVS Pharmacy, or some other subsidiary of CVS Health, were the Compliance Officer for Omnicare, does not make CVS Health a participant in the alleged fraud. But right now, there is no evidence on the subject either way.[1]

---

[1] I suppose it is theoretically possible that if CVS Health carried out an obligation of its own through an employee of a subsidiary, that employee's actions could be attributed to CVS Health. But the mere fact that CVS Health signed a compliance agreement with the Government is not enough to allow a trier of fact to reach that conclusion. In addition, it does not appear that the Government has advanced this line of argument.

## CONCLUSION

For the reasons stated above, CVS Health's motion for summary judgment is DENIED. However, I will be listening particularly closely at the upcoming trial for evidence that will be relevant to a motion for the inevitable motion for a directed verdict—one this Court will not hesitate to grant if the Government does not meet its burden of proving that CVS Health, a holding company, participated in the scheme alleged against its subsidiary Omnicare.

This constitutes a written opinion. The Clerk is directed to remove the motion at Dkt. No. 586 from the Court's list of open motions.

Dated: February 19, 2025

*[Signature]*

U.S.D.J.

BY ECF TO ALL COUNSEL