UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

UNITED STATES OF AMERICA ex rel
URI BASSAN,

        Plaintiff,

-against-                               15 civ 4179(CM)

OMNICARE, INC. and CVS HEALTH
CORP.,

        Defendants.

---------------------------------------------------------------x

## DECISION ON MOTIONS IN LIMINE

McMahon, J.:

      The Court, for its decision on the pending motions *in limine:*

### The Government's Motions *in Limine*

      1.      The Government moves *in limine* for an order precluding evidence or cross examination regarding irrelevant prior conduct of certain witnesses. (Dkt. #610). Specifically, the Government asks the Court to bar questioning of two of the Relators who filed *qui tam* complaints against Omnicare—Uri Bassan and Christopher Peterson—about prior altercations with law enforcement, including, for both men, claims that they engaged in acts of domestic violence (the charges against Bassan were dismissed; Peterson pleaded to a lesser charge of disorderly conduct). Both men also have traffic citations, Bassan for speeding. Finally, Peterson pleaded guilty to shoplifting in 1999, although the Government claims that Peterson was the victim of mistaken identity. The motion is GRANTED IN PART and DENIED IN PART.

      For the most part, Defendants concede that the Government is correct that these events are not proper matters for impeachment under Fed. R. Evid. 608(b). We will not be going into instances of alleged domestic violence or traffic tickets.

      However, I agree with Defendants that Peterson's guilty plea, if properly supported by some official proof, is relevant to his truthfulness and can be the subject of cross examination—as can his deposition testimony, when Peterson tried to walk back that plea by saying that someone who stole his driver's license, not he, was the actual shoplifter. Both the crime of shoplifting (a

1

crime of theft) and lying under oath are matters tending to show a witness' character for truthfulness.

2.  The Government moves separately for an order precluding any cross examination of Relator Uri Bassan about the circumstances of the termination of his employment at Omnicare in 2016. (Dkt. #610). The motion is DENIED.

Evidence about Bassan's firing is relevant and admissible to establish bias and credibility in his maintenance of this lawsuit. It is not admissible to prove motive for filing the lawsuit in the first place, since Bassan was not fired until six months after he filed this lawsuit. The evidence is not unduly prejudicial; the Government is free to establish that Bassan has never filed a claim of False Claims Act retaliation. This evidence is also independently relevant under Fed. R. Evid. 608, since the circumstances of Bassan's firing (he was terminated when Omnicare learned that he had allowed his wife to have access to HIPAA-protected information by fielding telephone calls made to him) tend to prove his character for truthfulness.

3.  The Government moves for an order to preclude the introduction of any evidence of purported pharmacy-industry practices that contradict federal and/or state pharmacy law. (Dkt. #614). The motion is GRANTED.

This Court has already ruled that any purported industry practice that violates the law—specifically, any law or regulation requiring that no drugs be dispensed without a valid prescription (either written or oral but promptly recorded by a pharmacist) from a practitioner licensed by law to dispense such drug, 21 U.S.C. § 353(b)(1)—is not thereby rendered legal, and so does not shield Omnicare or CVS Health should they have violated that law or regulation. Put otherwise, industry practice affords no defense to the Government's claims in this case. I reiterate that ruling today; Defendants are not free to substitute industry standards for the requirements of federal or state law. The fundamental dispute in this case, as I understand it, is over what constitutes a "valid" prescription order. If Omnicare is found to have dispensed drugs paid for by Medicare without first receiving a "valid prescription order," then "everybody does it" is no defense. This means that evidence that "everybody does it" is utterly lacking in probative value and would simply confuse the jury. No such evidence may be introduced.

42 C.F.R. §423.505(d)(2)(xi) requires that Omnicare retain for ten years a copy of every "prescription drug claim" that it files for reimbursement. The Government appears to rely on this regulation for its argument that Omnicare is required by federal law to retain copies of actual prescriptions for ten years. I do not know whether a copy of the underlying prescription is part of what must be submitted in support of a "prescription drug claim;" I assume I will learn about the requirements of law when the jury does. From other *in limine* motions, I gather that there will be considerable dispute over what the law requires be retained, and by whom. But if Omnicare violated some perfectly clear state law by not itself retaining a copy of a prescription order, it is no defense that industry practice is to allow long-term care facilities, rather than dispensing long-term care pharmacies, to retain the only copy of said prescription. The same is true if state law requires pharmacists to specify a number of authorized refills or a total quantity limit—or if state law imposes expiration dates on prescriptions. I gather that these requirements are undisputedly in effect in a large number of states.

Defendants apparently have evidence that, in certain states, "chart orders" are considered the equivalent of actual prescriptions at long-term care facilities. Defendants are free to offer that evidence—which at a minimum might render some of the allegedly false claims in suit valid and impact the amount of damages, so it is entirely relevant. The Government is equally free to cross examine the defense witnesses about any contention that state law authorizes a chart order of unlimited duration or for the dispensing of an unlimited quantity of any drug. The jury will be advised that practice cannot be substituted for the law, but can only fill in interstices in the law where the law is silent.

I reject Defendants' argument that evidence about industry practices that fail to conform to law is relevant to whether Defendants acted with a culpable state of mind. Just as ignorance of the law is no excuse, so too, setting aside plain legal requirements under the guise of "industry practice" is no excuse.

Nor does the fact that the Government may not have sued or taken regulatory action against other actors who allegedly engaged in the same practices that the Government challenges here necessarily constitute evidence that any violations of law in which Omnicare may have engaged are not "material." A trier of fact can surely infer, from the fact that the statute requires that no medication be dispensed except pursuant to a prescription written or received from a licensed practitioner, that in the ordinary course the fact that a drug *was* dispensed in the absence of a prescription is material to the decision to reimburse for that dispensation. Compliance with the law is always material; the Government is not presumed to aid and abet violations of law, and its failure to sue Lawbreaker 1 does not make the actions of Lawbreaker 2 legal. Therefore, the Government's introduction of evidence that Omnicare violated the law by dispensing drugs without first obtaining valid prescriptions from medical personnel who were authorized to prescribe more than satisfies its burden of going forward on the issue of materiality.

I am aware that, in *Universal Health Services, Inc. v. U.S.*, 579 U.S. 176, 195 (2016), the Supreme Court observed that,

> if the Government pays a particular claim in full despite its *actual knowledge* that certain requirements were violated, that is very strong evidence that those requirements are not material. Or, if the Government regularly pays a particular type of claim in full despite *actual knowledge* that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material.

(Emphasis added.) But evidence that others engage in an illegal practice and receive reimbursement is not the same thing as evidence that the Government knew that others were engaged in that illegal practice and were reimbursed anyway. It is only evidence of the Government's payment *with actual knowledge* that might render a particular violation of the FCA immaterial. If Defendants have in their pretrial order evidence that the Government routinely reimburses for drug dispensations that it *actually knows* are not supported by the type of prescription the law requires, they are welcome to offer it. But merely offering evidence that other pharmacies have received reimbursement for drugs "prescribed" in this manner is not sufficient under *Universal Health Services*. I do not read *Universal Health Services* to say that a clear

3

violation of law can ever be rendered immaterial by lack of Government enforcement in the absence of evidence that the Government has the requisite actual knowledge—especially where, as here, the alleged violation of statutory requirements is "so central to the provision of [prescription medication] that the Medicaid program would not have paid these claims had it known of these violations." *Id.* at 196. Moreover, I note that *Escobar* was a case about what was necessary to state a claim at the pleading stage—not about proof at trial. We are well beyond the pleading stage.

4.  The Government moves *in limine* to preclude evidence or argument regarding prescription records that were not produced in discovery or speculation that those records may exist elsewhere. (Dkt. #623). The motion is GRANTED. Magistrate Judge Figueredo correctly observed that Omnicare could not fail or refuse to produce prescription records that are responsive to the Government's discovery request but insist that they must exist "in a box somewhere." I note that this motion appears to be unnecessary, as Defendants have admitted that they do not intend to introduce such evidence. (Dkt. #653, at 4). However, note my decision below on Defendants' so-called "burden of proof" motion. (Dkt. #592).

**The Defendants' Motions *in Limine***

1.  Defendants move *in limine* for an order precluding the Government from making arguments that relate to "never pleaded allegations and theories of liability." (Dkt. #588). Having read the papers filed in support of the motion I have no idea what those allegations and theories might be; Defendants do not bother to explain to the Court what new theories the Government might be planning to spring on them at trial, so I cannot decide whether they are really "new" theories at all. The motion is DENIED without leave to renew, since the time for making motions *in limine* has expired.

2.  Defendants move *in limine* for an order excluding evidence and argument about subsequent remedial measures taken by Omnicare in response to the filing of this lawsuit—specifically changes that were made to Omnicare's computer dispensing systems and programs that relate to Defendants' so called "rollover" computer functionality. (Dkt. #590). The specific changes that Defendants seek to preclude the trier of fact from hearing about are (1) a change to prevent rollover dispensing via Cycle Fill in 2016; (2) a change to "turn off" rollover dispensing to many residential facilities via OmniDX in late 2015 and 2016; and (3) a change to "turn off" rollover dispensing at some residential facilities via Oasis in 2018. The motion is GRANTED IN PART AND DENIED IN PART.

The Government advises that it does not intend to introduce evidence about these changes in its case-in-chief in order to establish Omnicare's liability. However, in an abundance of caution, the Court will not deny the motion as moot but will grant it to that extent.

The Government advises that it intends to introduce evidence concerning discussions starting as early as 2008 about the need for modification to Omnicare's computer dispensing system in order to prevent rollover dispensing for residential facilities, as well as evidence that Omnicare did not make those changes. Those discussions do not qualify as evidence of any

4

"subsequent remedial measure;" they are not barred by Fed. R. Evid. 407 and they are highly relevant to Omnicare's scienter. The Government also intends to offer evidence about internal investigations, reviews, audits, and surveys concerning Omnicare's use of the rollover functionality, its impact, and possible changes that might be made to the system. Such evidence also does not run afoul of Fed. R. Evid. 407, which precludes only evidence about the implementation of changes—not about investigations, discussions or audits leading up to the making of changes. All of that background information is classic evidence of Omnicare's scienter, and it is all admissible for that purpose—a limitation that will be charged to the jury. This evidence can be admitted without telling the jury that Omnicare eventually made the changes that were under discussion.

Furthermore, evidence about the actual changes may be introduced for any purpose other than to prove liability, because Fed. R. Evid. 407 explicitly permits such use. So, for example, such evidence may be used for impeachment if Defendants open the door—which I very much doubt they will. Contrary to the Government's argument, however, Fed. R. Evid. 407 does not permit the introduction of evidence about the 2016 changes to rebut any defense argument that the original coding was appropriate. The inference that the Government would ask the jury to draw—that Omnicare knew the original coding was not appropriate and so made the necessary corrections—is evidence that the change qualifies as a subsequent remedial measure.

The most difficult aspect of this motion is the Government's assertion that evidence about the turning off of rollover dispensing in 2015-16 may be introduced as background evidence to explain a subsequent non-remedial measure—to wit, the decision that Defendants ultimately made to change some of the coding back. Obviously, reversing the remedial change is not itself remedial, and so does not fall under the prescription of Fed. R. Evid. 407. However, if the jury is not told of the 2016 change, it will have no context for understanding the change-back in 2018—particularly since the jury will be told (must be told, given the Government's theory of liability) about the allegedly illegal coding. Fed. R. Evid. 407 provides that the Court may admit evidence of a subsequent remedial measure for a purpose other than proving culpable conduct. Providing context to explain otherwise admissible evidence is ordinarily "another purpose" for which otherwise inadmissible evidence can be admitted—coupled, of course, with a limiting instruction.

But it is not clear to me that a limiting instruction will be sufficient in this instance to overcome the prejudice that Fed. R. Evid. 407 was designed to eliminate. It does not help that I do not understand whether the Government is alleging that the claims submitted by Omnicare during the period when the coding was changed were valid and reimbursable. If the Government is not seeking relief in connection with claims submitted during that two-year period, then I do not understand why the jury needs to be told the reason why—as opposed to being told that they are not to speculate about the reason why the Government is not challenging the validity of those claims. In short, I lack enough information to make a final decision about whether the 2016 coding change is admissible for contextualization notwithstanding the rather strict prohibition of Fed. R. Evid. 407.

Accordingly, the decision on the motion is reserved until the final pre-trial conference, at which time the parties should be prepared to explain their positions in greater detail.

3.      Defendants move *in limine* to preclude arguments that Omnicare bears the burden of proof in this case. (Dkt. #592) This silly motion—which is misnamed, as it is really a motion for an order declaring in advance of trial that the Government's proffered proof is insufficient—is DENIED. As the Government recognizes, it is the plaintiff who bears the ultimate burden of proving the elements of its False Claims Act claim; the jury will be so instructed.

Moreover, the Government is correct that it can satisfy its burden of proof without having to prove that no valid prescription for the drugs dispensed ever existed anywhere. What the jury will be told the Government must prove is that Omnicare dispensed drugs to individuals in residential care facilities without securing in each instance a valid prescription—and that it failed to secure new prescriptions when necessary in order to dispense refills. The evidence the Government proffered in connection with its *Daubert* motions is more than sufficient to meet its burden of going forward on this issue, and to prevail in the absence of any rebuttal (assuming, of course, that the jury credits the Government's evidence, which is a decision for the trier of fact, not for me).

In this case the evidence the Government plans to introduce appears to demonstrate that Omnicare dispensed drugs on a "rollover" or automatic refill basis as a result of certain coding in its computerized dispensing system—which allowed it to dispense or "refill" prescriptions without first obtaining a valid medical authorization therefor (i.e., a valid prescription). Omnicare's records, produced in discovery, admit of that inference. Once the Government has gone forward on that basis, Omnicare is perfectly free to offer evidence in rebuttal tending to show that it had access to a valid prescription from some source; the need to offer rebuttal evidence in a civil case after a plaintiff satisfies its burden of going forward is commonplace and does not result in a shifting of the ultimate burden of proof. Omnicare is not, however, free to ask the jury to speculate that it might have had access to a valid prescription somewhere at some time that would have allowed it to dispense the drugs that are the subject of this lawsuit.

Additionally, federal regulations plainly required Omnicare to maintain records of all prescription drug claims that it filed with Medicare for a ten-year period—which means that on the date the Government filed its complaint in intervention, in 2019, Omnicare was under an obligation to have in its files records relating to every potentially false claim in suit going back to 2010, a period well before anything relevant to this lawsuit. The Government is perfectly free to tell the jury that the law required Omnicare to retain records relating to every claim filed with the Government for ten years, and the jury is free to infer that if those records do not include or refer to prescriptions, Omnicare did not have a valid prescription when it submitted claims to the Government for reimbursement.

But Defendants can rest assured that I will tell the jury that Omnicare does not bear the ultimate burden of proof on any element of the claims asserted by the Government.

4.      Defendants move *in limine* to "exclude evidence and testimony contradicting representations made by the [United States Attorney's] Office" in connection with certain discovery disputes. (Dkt. # 594). For substantially the reasons outlined in the Government's brief in opposition, the motion is DENIED. We are not relitigating discovery rulings made by Judge

Figueredo and not timely appealed to this Court. I note that I am in no position to make rulings about representations allegedly made to someone other than myself, and Judge Figueredo is not going to be called to testify. Furthermore, I, like the Government, read this motion narrowly to apply only to the dispute over the evidence produced by the Government from its contractor Express Scripts (ESI). No other alleged representation is referenced in the motion, and I will not deal in hypotheticals. It does not sound like the Government has any intention to walk back the representations it made to Judge Figueredo about ESI's practices, so I do not understand why I was bothered by having to deal with this motion. Furthermore, Defendants may not renew this motion with greater specificity at a later date, since the time for making *in limine* motions has passed.

     5.     Defendants move *in limine* to exclude evidence about unrelated settlements and other legal proceedings. (Dkt. #596). The motion is GRANTED IN PART and DENIED IN PART.

To the extent the motion addresses the 2012 settlement between Omnicare and the U.S. Department of Health and Human Services, the Government does not intend to argue that this settlement is evidence that Omnicare is a "bad company," as Defendants contend. Nor does the Government intend to offer the 2012 Settlement Agreement as evidence that Omnicare dispensed the drugs at issue in this case without prescriptions, in violation of Fed. R. Evid. 408. Rather, the Government argues that the motion should be denied because evidence of the settlement is relevant to Omnicare's scienter—specifically, Omnicare's knowledge of the requirement that prescriptions were required before dispensing drugs to patients in long term care facilities.

It is my understanding from reading the motion papers and reviewing the 2012 Settlement Agreement that the dispute settled thereunder involved the dispensation of Schedule II controlled substances without valid written prescriptions or oral emergency authorizations. The dispute in this case is about the dispensation of drugs that are not controlled substances without valid prescriptions. It is not clear to me that the terms of the 2012 Settlement Agreement will demonstrate to the jury that Omnicare was aware of its obligations with respect to the dispensation of non-controlled prescription drugs; certainly, the terms of the 2012 Settlement Agreement do not contain any such assertion. I am not familiar with the details about the dispensation of controlled versus non-controlled substances by prescription, but simply by virtue of having filled prescriptions for controlled substances, I am aware that the rules for dispensing controlled substances are stricter than the rules for dispensing non-controlled substances—even non-controlled substances that must be prescribed, rather than being available over the counter. I do not intend to get into a mini-trial about that issue in order to establish that the 2012 Settlement Agreement constitutes evidence of knowledge/scienter about the requirements for prescribing non-controlled substances. Omnicare is charged with knowing what the law requires; adding the 2012 Settlement Agreement to the mix risks confusing the jury and sending us on a frolic and detour. The Settlement Agreement will not be admitted.

Evidence about the Corporate Integrity Agreement ("CIA") between CVS Health and the Government is admissible but only insofar as the Government is trying to prove that CVS Health is liable for the drug dispensing defalcations of Omnicare, its subsidiary. Knowing the facts behind the CIA, which settled a dispute that does not have anything to do with the dispensing of drugs, makes it less likely that it will turn out to have anything to do with this case, especially as the

Government's brief indicates that its theory is that CVS Health "directly and through its subsidiaries" played an important role in overseeing Omnicare's drug dispensing to residential facilities. While I have denied CVS Health's last-second motion for summary judgment, the Government is on notice that the law requires active involvement by CVS Health—not necessarily or only by its subsidiaries—in that process.

The Government represents that it will not introduce any evidence of other prior settlements or other legal proceedings. While the Government adds the caveat that it does not so intend "at this time," I am ruling that, because no notice has been given and there has been no opportunity for *in limine* litigation, it may not introduce evidence of any other settlement or legal proceeding in its case-in-chief. If the Government believes that it is necessary to introduce such evidence in a rebuttal case, we will deal with the matter after the close of Defendants' evidence.

6. Defendants move *in limine* to exclude references to patient harm. (Dkt. #598). The motion is DENIED AS MOOT. This issue was litigated during the *Daubert* phase. The Government has represented that it does not intend to offer proof of patient harm in support of its case-in-chief, and I hold it to that representation. By the same token, I have ruled that it may be appropriate for the Government to introduce such evidence in a rebuttal case, depending on whether Defendants make the argument that no patient harm occurred. We will deal with individual documents at the final pre-trial conference, and redaction may in some instances be necessary. As I have already told the parties, the jury will be instructed that harm to patients is not an element of the charged False Claims Act violation and that it is possible for a pharmacy to be found to violate the Act even though no evidence of harm to any actual patient is introduced.

7. Defendants move *in limine* for an order precluding evidence or argument about wrongdoing by long-term health care facilities. (Dkt. #600) Specifically, Defendants ask that the Government be precluded from offering evidence or argument that Omnicare, the long-term care facilities with which it worked, or the industry as a whole "abused, neglected, or otherwise 'preyed upon' vulnerable residents." The motion is GRANTED but only to the extent of prohibiting the Government from turning this into a case about the deficiencies of care at long-term health care facilities generally.

To be quite specific, the Government is not precluded from introducing evidence in its case-in-chief about how long-term health care facilities operate, what types of staffing they have, the types of medical care provided at those facilities, the extent to which the facilities oversee and manage residents' medication regimens, and how skilled nursing facilities and unskilled facilities differ in that respect. Such evidence is not evidence of industry-wide abuse, neglect or preying upon residents of those facilities; rather, it acquaints the jury with the type of facility that is the subject of this lawsuit. In that connection I see no need to discuss other lawsuits or administrative proceedings that were filed against such facilities for any reason. Whether they are good institutions or bad institutions is not a proper subject for this trial.

Similarly, the Government may be able to introduce evidence on rebuttal if Defendants introduce evidence of safe and effective use of medications at long-term care facilities. Obviously, I cannot assess the need for rebuttal evidence until the Defendants have put in their case and the Government makes a proffer. But any rebuttal evidence that might be allowed will have to be tied

8

to the proof of some element of a False Claims Act violation; we are not simply going to allow either party to assess the quality of care provided in this particular industry, or at any specific facility, because that is not an element of a False Claims Act violation.

If Omnicare's rollover computer program refills violated either federal or state law, as the Government contends, then it is no defense to a False Claims Act violation that the staff at long-term care facilities provide the best possible monitoring of medication use. If it does not violate the law, then the fact that long-term care facilities are negligent in this respect does not impact the veracity of the claims filed for reimbursement by Omnicare. In short, evidence of the sort discussed in Defendants' moving brief appears to the Court to be a frolic and detour, and it will be severely limited if not excluded altogether.

8.    Defendants move *in limine* for an order prohibiting argument or evidence about prescription drug prices "or the pharmaceutical industry." (Dkt. #602). This is another waste-of-my-time motion. The Government insists that the only evidence of prescription drug prices it intends to introduce will be evidence of the amount that was paid to Omnicare in connection with the allegedly false claims the latter submitted to Medicare. I can hardly bar the introduction of such evidence; it is relevant to the issue of remedy. General evidence about the ridiculously excessive price of many prescription drugs, and of health care generally, is not relevant to a False Claims Act case and so would never be admitted in any event. However, the Government does not intend to introduce any such evidence. Therefore, the motion is DENIED AS MOOT.

9.    Defendants move *in limine* for an order precluding evidence or argument about Defendants' financial condition. (Dkt. #604). The motion is DENIED AS MOOT, since the Government does not intend to introduce evidence or argue that Defendants should be liable for False Claims Act violations because they are large corporations that make a lot of money.

The allegations outlined at page 2 of the Government's Memorandum in Opposition—which are taken directly from the complaint in intervention—are not, in the opinion of this Court, evidence about Defendants' financial condition designed to inflame the jury about the size of CVS Health and/or Omnicare, or about the profits earned by these companies. There is no reason why the Government cannot introduce evidence in support of those allegations. The jury will receive the usual and customary instructions that large corporations are no different than any other type of party before a court of law. The Government will not be allowed to inflame the jury.

10.    Defendants move *in limine* for an order excluding evidence and argument relating to compliance issues at CVS Health/Omnicare other than the False Claims Act allegations in suit. (Dkt. # 606). In their brief in support of the motion, Defendants point to four specific documents internal to CVS Health that discuss various ongoing compliance projects at the CVS Health network companies, some of which are not relevant to the conduct at issue in this case, but some of which (according to the Government) are relevant to that conduct. Defendants ask that, at a minimum, irrelevant portions of those documents be redacted. They do not explain what portions of those documents qualify as "irrelevant," and I suspect the parties may not agree on that issue.

The decision on the motion is reserved until the final pre-trial conference. At that time the Government must present me with the documents it intends to introduce into evidence and explain

9

their relevance. If there are portions of those documents that Defendants deem objectionable, we will have it out then and there (unless, of course, the parties can come to some agreement on that issue in advance of the conference, which I would much prefer). The parties can rest assured that the Court will not be permitting the jury to decide that the existence of other, unrelated compliance issues at CVS Health has any bearing on the case at bar, and documents containing evidence relevant to the dispute here being litigated will need to be redacted to remove references to any compliance issues that are not relevant to the issues in suit.

11. Defendants move *in limine* for an order excluding evidence or argument about the dispensation of controlled substances, because the wrongdoing in this case relates to the dispensation of non-controlled substances. (Dkt. #612). The motion is GRANTED. The Government insists that any mention of controlled substances would be rare; as far as I am concerned it should be non-existent. Witnesses should be instructed not to refer to the dispensation of controlled substances in their testimony. Expert reports are not being admitted into evidence—they are hearsay—so it is not necessary to redact any such references in those documents. But there should be no questions (even for purposes of impeachment) to any witness about the dispensation of or prescription practices around controlled substances. Unlike the Government, I do not consider Defendants' motion to be overbroad. And I have already ruled that the 2012 Settlement Agreement, which relates to claims about the dispensation of non-controlled substances, does not on its face constitute evidence that would be admissible to prove scienter on the issue of the rules pertinent to the dispensation of non-controlled substances.

12. Finally, Defendants move *in limine* for an order precluding evidence or argument about the actions of CVS Health prior to its acquisition of Omnicare, which occurred in August 2015. (Dkt. #615). The motion is GRANTED. The Government can argue that CVS Health is legally liable for any Omnicare FCA violations that occurred prior to the acquisition date (August 18, 2015) without getting into the behavior of CVS Health prior to its acquisition of Omnicare. Any such evidence is entirely irrelevant.

## CONCLUSION

This is a written opinion, and it is the Court's order. It disposes of the following motions: Docket ## 588, 590, 592, 594, 596, 598, 600, 602, 604, 606, 607, 610, 612, 614, 615 and 618. The Clerk of Court is directed to remove all of those motions from the Court's list of open motions.

Dated: February 21, 2025

_____
U.S.D.J.

2/21/2025

BY ECF TO ALL COUNSEL