# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, *ex rel.* URI BASSAN,<br><br>        Plaintiffs,<br><br>        v.<br><br>OMNICARE, INC.,<br><br>        Defendant.<br><br>UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>OMNICARE, INC. and CVS HEALTH CORP.,<br><br>        Defendants. | Case No. 15-CV-4179-CM-VF |

## DEFENDANTS' POST-TRIAL BRIEF ADDRESSING PUNITIVE SANCTIONS

Enu Mainigi (*pro hac vice*)
Holly Conley (*pro hac vice*)
William Ashworth (*pro hac vice*)
Beth A. Stewart (*pro hac vice*)
David Randall J. Riskin (*pro hac vice*)
A. Joshua Podoll (*pro hac vice*)
Benjamin Hazelwood (Bar No. 5001508)
Suzanne Salgado (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC 20024
(202) 434-5000

For matters in New York:

650 Fifth Avenue, Suite 1500
New York, NY 10019

*Attorneys for Omnicare, Inc. and CVS Health Corporation*

## TABLE OF CONTENTS

STATUTORY BACKGROUND ........................................................................................................2

ARGUMENT ...................................................................................................................................3

I. THE FALSE CLAIMS ACT'S PENALTY PROVISION IS UNCONSTITUTIONAL AS APPLIED TO OMNICARE IN THIS ACTION. ...........................................................................................................................3

    A. The Constitution Does Not Allow Penalties Beyond a 1:1 Ratio. ...........................4

    B. In the Alternative, a Penalty Award Four Times Actual Damages Is the Most the Constitution Could Allow. .................................................................7

II. THE COURT SHOULD AWARD NO PENALTIES AGAINST CVS HEALTH CORPORATION. ............................................................................................11

CONCLUSION ..............................................................................................................................14

# TABLE OF AUTHORITIES

## CASES

*Bach v. First Union National Bank*, 486 F.3d 150 (6th Cir. 2007) .................................................7

*Bouveng v. NYG Capital LLC*, 175 F. Supp. 3d 380 (S.D.N.Y. 2016) ............................................6

*Dawe v. Corrections USA*, 506 Fed. Appx. 657 (9th Cir. 2013) .....................................................6

*Epic Systems Corp. v. Tata Consultancy Services Ltd.*, 980 F.3d 1117 (7th Cir. 2020) .................6

*Hendrix v. J-M Manufacturing Co., Inc.*, 76 F.4th 1164 (9th Cir. 2023) ......................................13

*Jones v. United Parcel Service, Inc.*, 674 F.3d 1187 (10th Cir. 2012) ...........................................6

*Jurinko v. Medical Protective Co.*, 305 Fed. Appx. 13 (3d Cir. 2008) ...........................................6

*Lompe v. Sunridge Partners, LLC*, 818 F.3d 1041 (10th Cir. 2016) ...............................................6

*Mendez-Matos v. Municipality of Guaynabo*, 557 F.3d 36 (1st Cir. 2009) ....................................6

*Morgan v. New York Life Insurance Co.*, 559 F.3d 425 (6th Cir. 2009) .........................................6

*Ondrisek v. Hoffman*, 698 F.3d 1020 (8th Cir. 2012) .....................................................................8

*Parker v. Time Warner Entertainment Co., L.P.*, 331 F.3d 13 (2d Cir. 2003) ..............................11

*Rex Trailer Co. v. United States*, 350 U.S. 148 (1956)................................................................13

*Saccameno v. U.S. Bank National Association*, 943 F.3d 1071 (7th Cir. 2020)............................6

*State Farm Mutual Auto Insurance Co. v. Campbell*, 538 U.S. 408 (2003).......................... *passim*

*Stop Illinois Health Care Fraud, LLC v. Sayeed,* 100 F.4th 899 (7th Cir. 2024)...........................9

*TKO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443 (1993).................................11

*Topeleman v. United States*, 263 F.2d 697 (4th Cir. 1959) .....................................................13, 14

*Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140 (2d Cir. 2014)........................................................8

*United States v. Bajakajian*, 524 U.S. 321 (1998)..........................................................................8

*United States ex rel. Bunk v. Gosselin World Wide Moving, N.V.*, 741 F.3d 390 (4th Cir. 2013) ................................................................................................................................10, 13, 14

*United States ex rel. Drakeford v. Tuomey*, 792 F.3d 364 (4th Cir. 2015) ..............................4, 7, 9

*United States ex rel. Fesenmaier v. Cameron-Ehlen Group, Inc.*, 715 F. Supp. 3d 1133 (D. Minn. 2024) .................................................................................................................. 4, 8

*United States ex rel. Grant v. Zorn*, 107 F.4th 782 (8th Cir. 2024) ..................................... 1, 4, 7, 8

*United States ex rel. McNeil v. Jolly*, 451 F. Supp. 3d 657 (E.D. La. 2020) ................................. 13

*United States ex rel. Montcrieff v. Peripheral Vascular Associates, P.A.*, 649 F. Supp. 3d 404 (W.D. Tex. 2023) ........................................................................................................... 10

*United States ex rel. Taylor v. Healthcare Associates of Texas, LLC*, 2025 WL 624493 (N.D. Tex. Feb. 26, 2025) ................................................................................................. *passim*

*United States ex rel. Tyson v. Amerigroup Illinois, Inc.*, 488 F. Supp. 2d 719 (N.D. Ill. 2007)) ................................................................................................................................. 10, 11

*United States v. Aleff*, 772 F.3d 508 (8th Cir. 2014) ....................................................................... 7

*United States v. Bestfoods*, 524 U.S. 51 (1998) ............................................................................ 13

*United States v. Honeywell International Inc.*, 47 F.4th 805 (D.C. Cir. 2022) ............................. 12

*United States v. Hughes*, 585 F.2d 284 (7th Cir. 1978) ................................................................ 13

*United States v. Karron*, 750 F. Supp. 2d 480 (S.D.N.Y. 2011) ..................................................... 9

*United States v. Mackby*, 339 F.3d 1013 (9th Cir. 2003) ............................................................. 10

*United States v. Rogan*, 2006 WL 8427270 (N.D. Ill. Oct. 2, 2006) .............................................. 9

*United States v. Rogan*, 517 F.3d 449 (7th Cir. 2008) ................................................................... 9

*United States v. Rohleder*, 157 F.2d 126 (3d Cir. 1946) .............................................................. 13

*United States v. Viloski*, 814 F.3d 104 (2d Cir. 2016) ................................................................... 4

*United States v. Williams*, 2003 WL 21384640 (N.D. Ill. June 12, 2003) ..................................... 9

*Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288 (11th Cir. 2021) ........................ 10

## OTHER AUTHORITIES

28 Code of Federal Regulations § 85.3 ............................................................................................ 3

31 United States Code § 3729 .......................................................................................................... 3

In *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), the Supreme Court imposed significant constitutional limitations on punitive damages.  Applying *State Farm* and its brethren, courts have developed a body of law restricting the ratio of punitive to actual damages.  The modern trend under the cases is to allow a ratio of no more than 4:1, and 1:1 when actual damages are substantial and the defendant's conduct is not egregious.  Courts routinely apply these constitutional limitations to False Claims Act penalties awards through the Excessive Fines Clause of the Eighth Amendment.  *See, e.g.*, *United States ex rel. Grant v. Zorn*, 107 F.4th 782, 797–800 (8th Cir. 2024).  This case, where the jury refused to award two-thirds of the relief the government sought, is a posterchild for imposing those limitations.

The jury awarded $135 million against Omnicare—29% of the damages the government was seeking.  The jury also found Omnicare liable for 3,341,032 false claims, again 29% of what the government sought.  But under the False Claims Act's per-claim penalty provision—which the jury never knew about—that number-of-claims finding would subject Omnicare to penalties of ***$26.9 billion to $53.9 billion***, eye-popping ratios of 199:1 to 397:1.

This cannot be what the jury intended when it awarded less than a third of what the government asked for.  And the Constitution does not permit such an outlandish award.  Omnicare did not cause anyone physical harm.  No medicine went to waste.  And Omnicare did not charge the government for services it did not provide.  The False Claims Act violation was, instead, a recordkeeping violation—which is not "reprehensible" within the meaning of *State Farm*.  These are precisely the kinds of facts that, without more, compel courts to impose penalties far below what the False Claims Act would otherwise require.

But there is more. When, as here, "compensatory damages are substantial, then a lesser ratio, ***perhaps only equal to compensatory damages***, can reach the outermost limit of the due

1

process guarantee." *State Farm*, 538 U.S. at 425 (emphasis added).  The jury's $135 million damages award is more than "substantial" within the meaning of *State Farm*.  Courts consistently apply a 1:1 penalty-to-damages ratio when compensatory damages are hundreds of thousands of dollars—orders of magnitude less than the jury's hundred-plus-million-dollar figure.  Given the nature of Omnicare's conduct and the size of the jury's award, the Constitution allows no more than actual damages as penalties—*i.e.*, a 1:1 ratio or $135,592,814.70.  Even if the Court disagrees, and in the alternative, the maximum penalty under the Constitution would be no more than four times actual damages, as recent False Claims Act cases have held.

The analysis for CVS Health Corporation is even more straightforward.  The jury found *zero* damages against the company, a conclusion that CVS Health Corporation did not cause the government any harm and should not be liable for financial penalty.  But the jury also found CVS Health Corporation liable for 1,016,039 false claims (32% of what the government sought), though it was not told why the number of claims mattered.  Given the jury's deliberate decision to attribute zero damages to CVS Health Corporation, the jury could not possibly have intended that CVS Health Corporation be subject to penalties of ***$14.1 billion to $28.3 billion***.  And such an award would be unconstitutional, including because the ratio of penalties to damages would be infinite for conduct that was, in reality, no more than an indirect parent corporation's ordinary supervision of its subsidiary.  Although some courts have permitted False Claims Act plaintiffs to recover penalties but not damages, those cases involved situations different from this one and, in most instances, did not even consider constitutional limits.  Simply put, any penalties against CVS Health Corporation would be unconstitutional given the jury's finding of zero damages.

## STATUTORY BACKGROUND

The False Claims Act imposes a penalty for each false claim a jury finds.  31 U.S.C.

§ 3729 (a)(1). The amount of statutory penalties has changed over time. During the relevant period the range was (i) $5,500 to $11,000 for claims submitted before November 2, 2015; and (ii) $13,946 to $27,894 for claims submitted after that date. *See* 28 C.F.R. § 85.3(a)(9); *id.* § 85.5(a), tbl. 1.

The jury found Omnicare liable for 3,341,032 false claims, and CVS Health Corporation liable for 1,016,039. It awarded $135 million in damages against Omnicare and $0 against CVS Health Corporation. Applying the penalties provision to this verdict without modification would yield the following range of penalties against Omnicare and CVS Health Corporation:

|  | **Damages** | **Claims**[1] | **Penalties Range** | **Penalties to Damages Ratio** |
|---|---|---|---|---|
| Omnicare | $135 million | 3,341,032 | $26,957,141,394 to $53,916,314,866 | 198:1 to 397:1 |
| CVS Health Corporation | $0 | 1,016,039 | $14,169,679,894 to $28,341,391,866 | Infinite |

**ARGUMENT**

I. **THE FALSE CLAIMS ACT'S PENALTY PROVISION IS UNCONSTITUTIONAL AS APPLIED TO OMNICARE IN THIS ACTION.**

In False Claims Act cases, courts apply *State Farm*'s limitations on punitive damages

---

[1] The jury did not identify which time period the claims it found were from, or whether the CVS Health Corporation claims completely overlap with the Omnicare claims. (It stands to reason they do, given the Court's instruction that the jury should find no liability against CVS Health Corporation if it does not find liability against Omnicare. (Tr. 4220:22-4221:5.)) Nor is there evidence whether the claims are from before or after the November 2, 2015 change to the statutory range. The CVS Health Corporation claims largely (if not entirely) post-date that change, because CVS Health Corporation's subsidiary acquired Omnicare only a few months earlier. For purposes of the discussion here, Omnicare and CVS Health Corporation have treated all of the CVS Health Corporation claims as falling under the post-November 2, 2015 penalties range, and the remaining claims as falling under the previous regime. Of course, if any of those remaining claims were from after November 2, 2015, the potential penalties would increase along with the ratio of penalties to actual damages.

3

through the Excessive Fines Clause. *See, e.g.*, *Grant*, 107 F.4th at 797–800; *United States ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 387 (4th Cir. 2015); *United States ex rel. Taylor v. Healthcare Assocs. of Tex., LLC*, 2025 WL 624493, at *7 (N.D. Tex. Feb. 26, 2025); *United States ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc.*, 715 F. Supp. 3d 1133, 1158–59 (D. Minn. 2024). The key considerations are the "reprehensibility" of the defendant's conduct and the ratio of punitive to compensatory damages. *State Farm*, 538 U.S. at 419, 425; *see also United States v. Viloski*, 814 F.3d 104, 113–14 (2d Cir. 2016) (describing Second Circuit's excessive-fines test). "When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *State Farm*, 538 U.S. at 425. Enhanced ratios are constitutional only when the underlying conduct was "egregious." *Id.*

    **A.**    **The Constitution Does Not Allow Penalties Beyond a 1:1 Ratio.**

Under these principles, and the facts of this case, a 1:1 ratio of penalties to actual damages is all the Constitution allows against Omnicare. Start with the reprehensibility of Omnicare's conduct. Omnicare did not "bill[] for fictitious services" or charge the government for something that was "never provided." *Taylor*, 2025 WL 624493, at *7. There is no indication Omnicare dispensed unnecessary medicine or that a single pill went to waste. *See Fesenmaier*, 715 F. Supp. 3d at 1159. And there is no evidence any patient suffered any harm. (Tr. 745:1–8, 877:14–18.) In fact, the record affirmatively disproves any notion that Omnicare "evinced an indifference to or a reckless disregard of the health or safety of others." *State Farm*, 538 U.S. at 419. There were multiple layers of protections to ensure patients were getting the medicine they needed in the amount they needed when they needed it. (*E.g.*, Tr. 348:25–355:5 (discussing manual processes and communication with physicians and facilities), 2227:25–2243:5 (prescrip-

tion-review process), 2334:5-2339:20 (role of consultant pharmacists), 3033:2–3051:24 (discussing medication management at assisted-living facilities), 3323:19–3339:4 (same).)

The financial loss the jury found was that a sophisticated government agency, not a financially vulnerable individual, paid for prescriptions it now says it would have rejected—despite extensive trial evidence that the agency accepted those very prescriptions in real time, and even though there is no dispute patients benefitted from the medication Omnicare dispensed. *State Farm*, 538 U.S. at 419. That agency, and others acting on its behalf, constantly audited Omnicare, foreclosing any suggestion of "malice, trickery, or deceit." *Id*. This case, ultimately, is about a failure to obtain or retain appropriate prescription documentation. And that conduct is "closer in gravity to something like a reporting offense," *Taylor*, 2025 WL 624493, at *7 (citation omitted)—the opposite of "particularly egregious act[s]" that would justify a significant punitive award under *State Farm*, 538 U.S. at 425 (quotation omitted).

Given this, no ratio of penalties to actual damages of more than 1:1 would be constitutional in this case. To start with the obvious: the False Claims Act's statutory penalties against Omnicare are "vastly out of alignment with the harm to the government." *Taylor*, 2025 WL 624493, at *7. Even the statutory minimum penalty would result in a ratio of nearly 200:1. At the maximum, the ratio would near 400:1. Such a high ratio of penalties to damages is plainly unconstitutional under any circumstances. *See, e.g.*, *State Farm*, 538 U.S. at 425. But it is especially improper given the size of the jury's damages award. In *State Farm*, the Supreme Court explained that "[w]hen compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *Id*.

Courts take *State Farm*'s directive seriously. Even when compensatory damages are hundreds of thousands of dollars—orders of magnitude less than the $135 million award here—

5

courts apply *State Farm*'s 1:1 ratio.  For example, in this district in *Bouveng v. NYG Capital LLC*, 175 F. Supp. 3d 380 (S.D.N.Y. 2016), the court reduced punitive damages to a 1:1 ratio to actual damages of $1.5 million despite "malicious, calculated, and repeated" defamation.  175 F. Supp. 3d at 346–50.  Courts of Appeals across the country have done the same thing when considering punitive-damages awards in cases with substantial compensatory damages:

- *Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, 980 F.3d 1117, 1144–45 (7th Cir. 2020) (imposing a 1:1 punitive to compensatory damages ratio because the "$140 million [compensatory] award ... far exceeds what other courts have considered 'substantial.'").

- *Saccameno v. U.S. Bank Nat'l Assoc.*, 943 F.3d 1071, 1091–92 (7th Cir. 2020) (reducing punitive damages from $3 million to $582,000, or 1:1 ratio of damages awarded across all claims in Fair Debt Collection Practices Act, Real Estate Settlement Procedures Act, and Illinois Consumer Fraud and Deceptive Business Practices Act case).

- *Lompe v. Sunridge Partners, LLC*, 818 F.3d 1041, 1073–75 (10th Cir. 2019) (reducing punitive damages of $22,500,000 to $1,950,000, or 1:1 ratio in personal-injury action).

- *Dawe v. Corrections USA*, 506 Fed. Appx. 657, 658–60 (9th Cir. 2013) (reducing punitive damages below 1:1 ratio, from $10,085,000 to $2,368,406, where compensatory damages were $2,591,409 for defamation, tortious interference, and false imprisonment claims).

- *Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1207–08 (10th Cir. 2012) (reducing punitive damages from $2 million to $630,307, or 1:1 with compensatory damages, in retaliatory-discharge case).

- *Mendez-Matos v. Municipality of Guaynabo*, 557 F.3d 36, 56 (1st Cir. 2009) (reducing punitive damages from $350,000 to $35,000, or 1:1 with compensatory damages, in illegal arrest § 1983 suit).

- *Morgan v. N.Y. Life Ins. Co.*, 559 F.3d 425, 443 (6th Cir. 2009) (reducing $10 million punitive damages award in age discrimination suit to $6 million, or 1:1 with compensatory damages).

- *Jurinko v. Medical Protective Co.*, 305 Fed. Appx. 13, 15, 30 (3d Cir. 2008) (reducing punitive damages from $6,250,000 to $1,658,345, or 1:1 with compensatory damages, in insurance bad-faith case).

- *Bach v. First Union Nat. Bank*, 486 F.3d 150, 156–57 (6th Cir. 2007) (reducing punitive damages from $2.2 million to $400,000, or 1:1 with compensatory damages for Fair Credit Reporting Act violations).

The Court should follow this long and consistent line of cases here. Indeed, this is the paradigm case where "a lesser ratio ... equal to compensatory damages" reaches "the outermost limit of the due process guarantee." *State Farm*, 538 U.S. at 425. The jury awarded $135 million in damages—a substantial award by any measure, but only 29% of what the government sought against Omnicare—for conduct that is not reprehensible within the meaning of *State Farm* and its progeny, or under the Excessive Fines Clause. No penalty of more than $135,592,814.70—a 1:1 ratio of penalties to actual damages—would be constitutional in this case.

The Court, in fact, may measure the 1:1 ratio as between all punitive sanctions (trebled damages and penalties) and actual damages. Courts treat False Claims Act trebled damages as at least partially punitive, too. *See United States v. Aleff*, 772 F.3d 508, 512 (8th Cir. 2014) ("The FCA's treble damages in combination with the per-claim penalties are punitive for purposes of the Excessive Fines Clause."); *see also Drakeford*, 792 F.3d at 387–88 (treble damages partially punitive).

### B. In the Alternative, a Penalty Award Four Times Actual Damages Is the Most the Constitution Could Allow.

In the alternative, and if the Court concluded that a ratio of penalties to actual damages exceeding 1:1 is constitutional under the circumstances of this case, no award greater than a 4:1 ratio could pass muster, as recent False Claims Act cases addressing excessive-penalty awards illustrate. *See Grant*, 107 F.4th at 799 (noting that, under *State Farm*, "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety" regardless of the amount of compensatory damages).

1. In the past two years alone, three courts in False Claims Act cases have struck

7

down penalties exceeding a 4:1 ratio, and two of those imposed penalties of less than four times actual damages. In *Grant*, the Eighth Circuit held that penalties at least seventy-five times greater than damages were unconstitutional under the Excessive Fines Clause, and remanded for the district court to reduce penalties to a ratio consistent with *State Farm*. 107 F.4th at 797–99. The district court in *Taylor* found the defendant submitted claims "without proper documentation," resulting in damages of $2,753,641.86, but held the conduct was "closer in gravity to something like a 'reporting offense'" and reduced penalties from more than 100 times actual damages to three times actual damages. 2025 WL 624493, at *7 (quoting *United States v. Bajakajian*, 524 U.S. 321, 337 (1998)). And in *Fesenmaier*, where distributors of ophthalmologic supplies paid kickbacks to ophthalmologists resulting in damages of $43,335,049.71, the court reduced penalties from $358 million to $86 million, a 2:1 ratio to actual damages. 715 F. Supp. 3d at 1159, 1164–65.

These cases reflect a concern that, as applied, the False Claims Act's punitive sanctions may far outstrip the "degree of reprehensibility of the defendant's conduct." *Grant*, 107 F.4th at 799; *see also, e.g.*, *Taylor*, 2025 WL 624493, at *7 (condemning greater-than-100:1 ratio of penalties to damages, which was "vastly out of alignment with the harm to the government in this case"). Even reprehensible conduct, though, may not lead courts to exceed the 4:1 cap that has developed from the Supreme Court's punitive-damages jurisprudence. *See Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 165–66 (2d Cir. 2014) (reducing $20 million punitive damages award to 2:1 ratio notwithstanding defendants' years-long "overt racist harassment" and "indifference to [plaintiff's] health, safety, and general well-being" that were "egregious"); *Ondrisek v. Hoffman*, 698 F.3d 1020, 1029–31 (8th Cir. 2012) (reducing a 10:1 ratio to 4:1 despite "extreme reprehensibility" of cult leader's repeated physical abuse of minors).

8

Other courts have found False Claims Act punitive awards constitutional because the ratio of penalties to actual damages fell below 4:1. In *Drakeford*, for instance, the court rejected excessive-fine and due-process challenges where the ratio of "punitive damages" (penalties *and* a portion of the trebled damages) to actual damages "was approximately 3.6-to-1." 792 F.3d at 389 & n.20. The ratio of statutory penalties to actual damages was less, of course. In *United States v. Williams*, 2003 WL 21384640 (N.D. Ill. June 12, 2003), the court brushed aside an excessive-fines argument where it had imposed penalties at a 2:1 ratio to actual damages. 2003 WL 21384640, at *6. And in *United States v. Rogan*, 517 F.3d 449 (7th Cir. 2008), the court avoided the question whether the Excessive Fines Clause applied to the False Claims Act in part because "the total" amount of the judgment was "less than four times actual damages." 517 F.3d at 454. There, the ratio of penalties to actual damages was *below* a 1:1 ratio ($17 million in actual damages and $13 million in penalties). *United States v. Rogan*, 2006 WL 8427270, at *27 (N.D. Ill. Oct. 2, 2006).

2. No Court of Appeals has refused to apply the Excessive Fines Clause to the penalties provision of the False Claims Act. The closest any has come is "voic[ing] skepticism," without saying (one way or the other) whether it applies. *See Stop Ill. Health Care Fraud, LLC v. Sayeed,* 100 F.4th 899, 906–907 (7th Cir. 2024) (citing *Rogan*, 517 F.3d at 453–54).[2] Both *Sayeed* and *Rogan* concluded, however, the penalties would have passed constitutional muster anyway. *Sayeed*, 100 F.4th at 907; *Rogan*, 517 F.3d at 454.

---

[2] In the one Southern District of New York case to touch the question, the court in *United States v. Karron*, 750 F. Supp. 2d 480 (S.D.N.Y. 2011), rejected the defendant's excessive-fines and due-process challenges only as to trebled damages (there was no challenge to penalties). 750 F. Supp. 2d 493 n.12. In so holding, the court observed it was "not aware of a successful due process challenge to the FCA's scheme of damages," *id.*, which is out of step with how more-recent decision have proceeded. And in all events, the court acknowledged the ratio of total judgment to actual damages was just over 3:1. *Id.*

9

The outlier cases that have permitted penalties above a 4:1 range bear no resemblance to this one, as they involved conduct deemed particularly blameworthy, not "a reporting offense." *Taylor*, 2025 WL 624493, at *7. In *Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288 (11th Cir. 2021), for example, the defendants, "altered the relevant information" on claims submission forms *after* Medicare rejected their claims for reimbursement and retaliated against the relator for reporting the fraud. 21 F.4th at 1295. In *United States v. Mackby*, 339 F.3d 1013 (9th Cir. 2003), the defendant used his father's Medicare number—as his father was a licensed physician—to obtain payments for two years of unlicensed physical-therapy services, even though the defendant "was neither a doctor nor a physical therapist in private practice." 339 F.3d at 1018–19. In *United States ex rel. Bunk v. Gosselin World Wide Moving, N.V.*, 741 F.3d 390 (4th Cir. 2013), a defense contractor engaged in conduct analogous to government-contract bid rigging for which the defendant had been criminally convicted. 741 F.3d at 409. In *United States ex rel. Montcrieff v. Peripheral Vascular Associates, P.A.*, the defendant submitted claims "to receive reimbursements for services that had not been provided." 649 F. Supp. 3d 404, 426–27 (W.D. Tex. 2023), *overruled on other grounds*, 133 F.4th 395 (5th Cir. 2025). And in *United States ex rel. Tyson v. Amerigroup Illinois, Inc.*, the defendants purposefully avoided providing coverage to "pregnant women and 'unhealthies'" to increase their profits. 488 F. Supp. 2d 719, 745, 748 (N.D. Ill. 2007).

None of these cases involved conduct remotely comparable to Omnicare's here. All, save for *Tyson*, involved actual damages and penalties significantly smaller than this case: $58,151.64 in actual damages and $729,454.92 total (*Mackby*); $24 million in penalties (*Bunk*); $755.54 in pre-trebled damages and $1.17 million total (*Yates*); and $2.35 million in pre-trebled damages and $30 million total (*Montcrieff*). And none, save for *Tyson*, considered due-process

10

limits on punitive sanctions, or even assessed the proportionality of penalties to damages.

This breaks from the unmistakable modern trend of applying due-process principles when undertaking an excessive-fines analysis, including under the False Claims Act. *Tyson*, for its part, found due-process principles generally, and *State Farm* specifically, inapplicable to "statutory damages." *Tyson*, 488 F. Supp. 2d at 748. That conflicts with both the modern trend of cases and the Second Circuit's direction that a district court may reduce a "sufficiently serious" statutory damages award under the Due Process Clause. *Parker v. Time Warner Entmt. Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003) (citing *State Farm*, 538 U.S. at 416); *see also TKO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 453–54 (1993) (due process "imposes substantive limits beyond which penalties may not go"). *Tyson* is inapt.

## II. THE COURT SHOULD AWARD NO PENALTIES AGAINST CVS HEALTH CORPORATION.

The jury found CVS Health Corporation caused the government *zero* damages. That finding indicates that the jury concluded CVS Health Corporation should not face any sort of financial penalty for Omnicare's conduct. But the jury's finding of 1,016,039 false claims—which it made without knowing the consequences—exposes CVS Health Corporation to billions of dollars of penalties.

A. That result makes no sense. And the conclusion that no penalties should be imposed against CVS Health Corporation is not just intuitive, it is plain from the constitutional analysis courts conduct in False Claims Act penalty cases. *First*, as to reprehensibility, there was no evidence CVS Health Corporation actually submitted any false claims. Rather, the government's theory was that CVS Health Corporation (the parent of Omnicare's parent) was aware Omnicare submitted false claims and did not stop Omnicare from doing so—at least for some period of time. (ECF 735 at 5–12 (cataloguing facts concerning CVS Health Corporation).) And

11

on this point, the Court observed "there is not very much countervailing evidence to tar CVS Health Corp…. For example, there is no evidence that the Board of CVS Health Corp. ever considered, let alone adopted, a resolution refusing to adopt changes to Omnicare's dispensing practice." (ECF 756 at 22.) Indeed, the Court concluded "there is ample evidence to support a reasonable jury's finding that CVS Health Corp. did *not* directly participate in Omnicare's submission of false claims"—which would mean no liability for CVS Health Corporation. (ECF 756 at 23 (emphasis added).) Certainly, the evidence does not permit a finding of egregious behavior warranting an infinitely high punitive-damages award. If Omnicare's conduct was "closer in gravity to something like a reporting offense," *Taylor*, 2025 WL 624493, at *7, CVS Health Corporation's conduct is even less blameworthy and even less able to support an award of penalties.

*Second*, the ratio of any penalty to the (*zero*) damages the jury found against CVS Health is infinite. The jury found CVS Health Corporation caused **no harm**. No monetary damage to the government; no physical harm to any individual or entity; nothing. In such circumstances, any penalty would be "vastly"—indeed, infinitely—"out of alignment with the harm to the government." *Id.*

It would be no answer for the government to say that, irrespective of the jury's no-harm finding, CVS Health Corporation would be jointly-and-severally responsible for some amount of penalties. For one thing, although it is true that co-defendants in False Claims Act cases generally may be jointly-and-severally liable for collective harm to the government, the jury's finding of no liability forecloses that possibility here. *See United States v. Honeywell Int'l Inc.*, 47 F.4th 805, 810 (D.C. Cir. 2022). For another thing, any imposition of joint-and-several liability would run headlong into the dispositive constitutional problems discussed above. And one more: "joint and several liability should not be imposed if it would lead to inequitable results." *United*

12

*States ex rel. McNeil v. Jolly*, 451 F. Supp. 3d 657, 684 (E.D. La. 2020). That is precisely what it would yield here. CVS Health Corporation, which the jury found caused no damage, would be liable for penalties arising from false claims submitted by its indirect subsidiary. That is contrary to fundamental principles of fairness. And it is an end-run around the bedrock principle that parent corporations are not liable for their subsidiaries' acts. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).

      B.      To be sure, courts have awarded penalties in False Claims Act cases where there were no damages. Those cases are distinguishable. In many, the plaintiff never actually sought damages at trial, meaning there was no express jury finding the defendant caused no harm. *See Rex Trailer Co. v. United States*, 350 U.S. 148, 151–53 (1956); *Bunk*, 741 F.3d at 409; *United States v. Hughes*, 585 F.2d 284, 286–87 (7th Cir. 1978); *United States v. Rohleder*, 157 F.2d 126, 127 (3d Cir. 1946); *Topeleman v. United States*, 263 F.2d 697, 700–01 (4th Cir. 1959) (only noting damages sought for one of the consolidated cases). Here, of course, the government sought damages against CVS Health Corporation, and the jury found none. Nor did most of these cases address the constitutional considerations that animate more recent decisions on the constitutionality of punitive awards under the False Claims Act. *See, e.g.*, *Hendrix v. J-M Manufacturing Co., Inc.*, 76 F.4th 1164, 1173 n.5 (9th Cir. 2023) (relying on *Rex* and other cases without conducting constitutional analysis). In fact, all but one (*Bunk*) predated *State Farm*.

      *Topelman* and *Bunk* did confront constitutional challenges, but they are distinguishable—and not only because, as noted, neither involved a request for compensatory damages, nor, as here, a finding of no damages where the plaintiff had sought them. *Topelman* only addressed the Due Process Clause (not the Excessive Fines Clause), and the Fourth Circuit decided it nearly half a century before *State Farm*. Even then, the punitive awards there were miniscule compared

13

to the punitive awards here: $164,000 and $60,000 in penalties without actual damages. 263 F.2d at 698–99. In *Bunk*, the defendants already had paid restitution through a separate criminal proceeding addressing analogous conduct (so there was a basis for assessing harm). Although the court rejected an excessive fines challenge, it did not confront the question whether there was an impermissible ratio of penalties-to-actual damages under *State Farm*. 741 F.3d at 390, 409.

Setting all of that aside, *Topelman* and *Bunk* are non-binding and wrongly decided. The Constitution's limitations on penalties do not disappear when a jury finds that a defendant caused no harm. They apply with even more force. A contrary ruling would have bizarre consequences. A False Claims Act defendant who submitted 1000 false claims but caused no damages could be liable for a minimum of $13.9 million in penalties; a defendant who submitted the same 1000 false claims and caused $100,000 in damages could not. The Constitution does not allow that result. The Court should award no penalties against CVS Health Corporation.

## CONCLUSION

The Court should follow *State Farm* and excessive-fines limitations on False Claims Act penalties awards, and impose penalties of no more than $135,592,814.70 against Omnicare and $0 against CVS Health Corporation.

14

| | |
|---|---|
| Dated:  May 16, 2025 | Respectfully submitted,<br><br>WILLIAMS & CONNOLLY LLP<br><br> /s/ Enu Mainigi<br>   Enu Mainigi (*pro hac vice*)<br>   Holly Conley (*pro hac vice*)<br>   William Ashworth (*pro hac vice*)<br>   Beth A. Stewart (*pro hac vice*)<br>   David Randall J. Riskin (*pro hac vice*)<br>   A. Joshua Podoll (*pro hac vice*)<br>   Benjamin Hazelwood (Bar No. 5001508)<br>   Suzanne Salgado (*pro hac vice*)<br>   680 Maine Avenue, S.W.<br>   Washington, DC 20024<br>   (202) 434-5000<br><br>For matters in New York:<br><br>   650 Fifth Avenue<br>   Suite 1500<br>   New York, NY 10019<br><br>*Attorneys for Omnicare, Inc. & CVS Health Corporation* |